NEW MEMPHIS GAS & LIGHT CO. v. CITY OF MEMPHIS.

(Circuit Court, W. D. Tennessee, W. D. March 20, 1896.)

1. POLICE POWER—REGULATING PRICE OF GAS—REASONABLENESS.

Under an act of a state legislature authorizing a taxing district to regulate the price of gas furnished by gas companies within such taxing district, provided the price shall not be fixed below a certain minimum, such power to regulate cannot be exercised arbitrarily, without investigation of the facts bearing upon the reasonableness of the rate to be fixed, or in such a manner as to bring about a destruction or confiscation of the property of the gas companies; but due regard must be given to the right of such companies to receive such an income from their business as to pay operating expenses, legitimate fixed charges, and a reasonable profit.

2. EQUITY PRACTICE—PRELIMINARY INJUNCTION.

Accordingly, upon a bill charging that a rate for gas, fixed under such a statute by a taxing district, was fixed arbitrarily, without investigation, and was so unreasonably low that the company affected would be unable

to meet its expenses and fixed charges, and would be rendered insolvent, and praying for an injunction to restrain the enforcement of the ordinance fixing the rate, *held*, that a preliminary injunction restraining its enforcement should be granted, upon the gas company's giving a bond to refund to the consumers of gas the excess of charges if its bill should fail.

**3.** SAME.

On application for preliminary injunction it is not proper to decide the merits of the controversy, especially where the case turns on grave questions of law. All that the judge should, as a general rule, require, is a case of probable right and probable danger to that right without the interposition of the court, and the judge's discretion should then be regulated by the balance of inconvenience or injury to the one party or the other.

**4.** SAME.

The judge should, in a case of probable right, grant the provisional injunction where the relief sought is essentially preventive and a denial of the injunction might in effect amount to denial of all relief.

Brown, Hirsh & Brown and Thos. M. Scruggs, for complainant.
S. P. Walker, City Atty., for defendant.

CLARK, District Judge. The question now considered in this case is whether a preliminary injunction shall be allowed. This question arises upon bill, answer, and affidavits in support of the charges in the bill. The act of the legislature of the state of 1887 (chapter 91) confers upon the taxing district of Memphis the power to regulate gas companies, and also to regulate the price to be charged for gas furnished to the city and its inhabitants, with a provision that it shall not reduce the price below $1.50 per 1,000 feet, when paid within the customary discount days. Pursuant to this legislative authority, the taxing district, by ordinance, October 29, 1895, undertook to exercise the power of regulation by reducing the price of gas from $1.75 per 1,000 feet, as theretofore charged, to the lowest limit which, under the statute, it was permitted to go, namely, $1.50 per 1,000 feet. The ordinance was subsequently amended so as to make its violation a misdemeanor and a subject of prosecution. The substance of the charges made in the bill, as ground for an injunction, is that this ordinance is invalid because the price fixed thereby was arbitrarily done; the taxing district going to the lowest limit possible, without any method whatever of inquiry to ascertain whether the rate fixed was reasonable, or such as would enable the company to maintain its existence or to make a reasonable profit on the money invested in the enterprise. Various questions are made in the bill, as well as in the brief, as to the constitutionality of the legislative act, and of the ordinance passed under authority of that act. So, too, various questions arise as to whether or not the New Gas Company, by virtue of its organization under the act of 1885, has so connected itself with the contract rights and privileges of the old company under its charter as to be exempt from regulation, beyond such as might have been had in regard to the old company, and under the original charter of that company.

It is to be borne in mind that it is not proper, on an application of this kind, to decide, or to consider with a view to final decision, the merits of the controversy, especially where such merits turn

on grave questions of law. It would no more be proper to do so on a motion for an injunction than on a motion to dissolve an injunction. Owen v. Brien, 2 Tenn. Ch. 295. It is consequently settled that, upon preliminary application for an injunction, all that the judge should, as a general rule, require, is a case of probable right, and probable danger to that right without the interposition of the court; and his discretion should then be regulated by the balance of inconvenience or injury to the one party or the other. 2 Beach, Mod. Eq. Prac. § 756; Flippin v. Knaffle, 2 Tenn. Ch. 238. Such being the practice upon this subject, I do not now deem it proper to discuss the more serious legal questions here involved. I think it is safer to make such examination as is now required from the standpoint of the contention made by the able counsel for the taxing district, and determine how far this contention meets the prima facie case made in the bill for injunction, and whether such contention offers valid ground for refusing the preliminary injunction.

The defendant's contention is that the New Gas Company became incorporated in 1894 subsequent to the passage of the act of 1887 authorizing regulation, and that it therefore took its franchises subject to the provision of said act, and that the ordinance of the taxing district, although passed subsequent to the incorporation of the New Company, was merely in execution of the legislative act, and is therefore entirely valid, if the act of the assembly is itself valid. I think this contention is in the main sound. And I desire to say, in passing, that, if the New Company can so connect itself with the old company as to stand in the shoes of the old company in all respects, I do not think that it by any means follows that the company is not subject to regulation as to the price which it shall charge for gas. It would require provisions in the original charter sufficiently definite to amount to a contract right to exemption from regulation, before its claim to this effect could be sustained. But the real attack made in this bill upon the ordinance in question is not so much that the act of assembly authorizing an ordinance is, when properly construed and enforced, not valid, but that the ordinance is not a legal and proper exercise of the power conferred by that act. The objection is not so much to the legislation on its face, as to the manner in which the taxing district has undertaken to enforce the act. The act of the general assembly is to receive such construction as will render it, if possible, constitutional and valid, and not invalid; and it must be borne in mind, constantly, that when a corporation is chartered under the general incorporation law, with the right to manufacture and sell gas, the right to charge a reasonable rate for all gas furnished is a right implied, and one that forms part of the charter contract with the state, which cannot be impaired by legislation. And a reservation of the right to repeal, modify, or amend the charter does not change this rule, so long as the state chooses to allow the charter and the charter rights to remain. Conceding for the present that under this reserved power the state might withdraw the franchises granted, and extinguish the corporate existence, that is not the question here,

as the state has not attempted to do anything of the kind, and no attempt has been made to amend or modify the charter. An extinguishment of the charter and of corporate existence must be distinguished from an unreasonable regulation of the corporation while its existence is permitted by law; and the legislature would have no more power, by an unreasonable amendment of the charter, to destroy the company's business, and thereby destroy its property, which is devoted to, and valuable only for its use in the conduct of, such business, than it would have to accomplish this result by an independent statute. The state is under an obligation to act justly, and without arbitrary discrimination, between corporations of the state, just as it is between citizens of the state enjoying equal rights. The state cannot, under the guise of a regulation, bring about a destruction and a confiscation of a company's property; and the state's power to absolutely abolish the corporation must be distinguished from its power to destroy its business and confiscate its property, so long as it chooses to permit its existence and to authorize its business by a valid charter. Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702. And this is the fair result of what are known as the "Reagan Cases." 154 U. S. 362, 420, 413, 418, 14 Sup. Ct. 1047, 1060, 1062. And the question of the reasonableness of a rate of charge is eminently a question for judicial investigation, requiring due process of law for its determination. And to deprive a company of the power of charging reasonable rates for the manufacture and sale of gas is to deprive it of the use of its property, and, in effect, of the property itself, without the due process of law. Chicago, M. & St. P. Ry. Co. v. Minnesota, supra. The act of assembly under consideration, therefore, must be given a construction which would not render it invalid, or obnoxious to constitutional objections, for otherwise the act itself would be void. It is clear, therefore, that the act in question, in fixing a limit below which the taxing district should not go, did not thereby authorize the taxing district to reduce the price of gas to that limit arbitrarily. And the very use of the term "regulation" implies that an investigation shall be made; that an opportunity to present the facts shall be furnished; that, when the facts are established, they shall, by the regulating power, be given due consideration; and that such action as shall be taken in view of these facts, thus ascertained, shall be just and reasonable, and such as enables the company to maintain its existence, to preserve the property invested from destruction, and to receive, on the capital actually and bona fide invested in the plant, a remuneration or dividend corresponding in amount to the ruling rates of interest. The company has a right to such gross income from the sale of gas as will enable it to pay all legitimate operating expenses, pay interest on valid fixed charges, so far as bonds or securities represent an expenditure actually made in good faith, and also to pay a reasonable dividend on stock, so far as this represents an actual investment in the enterprise. All of these items, and perhaps others, must be taken into account, in any regulation which may be made in respect to the prices of gas. Such investigation and

such regulation as are contemplated by the statute might enable the company to fix the price at $1.50 per 1,000 feet, or at any named figure between that and the former price of $1.75 per 1,000 feet. This would depend on the reasonableness of the regulation, in the sense above explained; keeping constantly in mind that the power to regulate rates is not a power to destroy, and that limitation is not the equivalent of confiscation. It is common for railroad charters to provide that the carrier may charge a rate for transportation of goods and passengers, not exceeding a fixed amount; for example, five cents a mile for every passenger. But this is a restriction on the company itself, as to its charges, and it is entirely competent for the legislature, notwithstanding this provision, to regulate the charges, within reasonable limits, and to fix a sum below the maximum, beyond which the company could not go. Ragan v. Aiken, 9 Lea, 609. Such is the doctrine of the Reagan Cases. Indeed, this is all now very well understood and is familiar.

So the minimum fixed in this statute, below which the taxing district cannot go, is a restriction on the taxing district itself, and a limitation on its power in this respect; and it is compelled to fix a limit above this sum, if it is just and reasonable to do so. Now, if the contention made in this bill is true, the taxing district, without any inquiry, and without any adequate knowledge whatever, and without any effort to know the truth and do justice, has undertaken, in the first instance, and by way of arbitrary action, to exercise its power down to the lowest limit. So, I repeat, the objection is not so much to anything in the terms of the ordinance, or of the act of the assembly, as in the facts which exist outside of the ordinance. If the plaintiff can, by proof, sustain the charges of this bill, it results inevitably that the ordinance is not a legal and valid exercise of the power conferred on the taxing district by this statute, but is an attempt to exercise the power in a manner which clearly amounts to destruction, and in such manner, too, as that if the act of assembly had undertaken, in terms, to authorize it, would render the act unconstitutional and void on its face. The distinction is between a valid and just execution of the power given by the act, and an illegal and unwarranted execution of such power. The bill charges distinctly that under the rate of charges, as fixed by this ordinance, the corporation would not be able to pay its expenses, interest on its fixed charges, much less a reasonable interest or dividend on its stock, and that an attempt to operate under such a rate of prices would result in its bankruptcy. And the bill, in its main allegations in this respect, is supported by affidavits of persons experienced in the manufacture and sale of gas, and some of them, so far as the record discloses, without any interest in this controversy. So that, according to the prima facie showing, if the injunction should be refused, and the city allowed to put this destructive rate in force, the insolvency and dissolution of this company would speedily follow. It seems to me clear, therefore, that, considering as I must do, the balance of inconvenience and injury which may result to one party or the other from my action on this injunction pending the litigation, the injunction

should be allowed.  The public can be protected by a bond in a suitable sum, with condition to refund either to the persons who consume gas, or to the taxing district, for the use and benefit of such persons, all sums which may be charged over the rate fixed by this ordinance, in the event plaintiff's bill shall fail, and the regulation by said ordinance be sustained as valid on final hearing.  It will not be difficult to thus reimburse fully each purchaser of gas for the excess which may be paid over the rates fixed by the ordinance, if finally sustained, and no serious injury can therefore result to the public, while to refuse the injunction would possibly result in the destruction of the plaintiff's business and property before this litigation can be terminated.  It is to be observed that this is a bill essentially for preventive relief only, and a denial of the injunction might, in its practical effect, amount to a denial of all relief.  The injunction is therefore granted, upon the execution of such bond, and, in case the amount thereof is not agreed upon by the solicitors in the case, the amount will be fixed through the aid of the clerk of this court, upon proper inquiry made by him for that purpose.