# MINNEAPOLIS GASLIGHT COMPANY v. CITY OF MINNEAPOLIS and Others.[1]

October 24, 1913.

Nos. 18,424—(285).[2]

**Order of trial court — memorandum attached — construction.**

1. A positive and unambiguous order of the trial court cannot be modified or limited by inferences drawn from a memorandum of the judge not made a part thereof.

**Gas — rates established by city council — presumption — burden of proof.**

2. The contract between plaintiff and the city having authorized the city council to fix fair and reasonable rates for gas, the rates fixed by the council, acting under such authority, are presumed to be fair and reasonable until the contrary is shown, and, if it be claimed by plaintiff that the rates so fixed are unfair and unreasonable, the onus is upon plaintiff to show that fact.

**Finding of fact — reversal by this court.**

3. Where, upon the hearing of an order to show cause, or a motion, an

---

[1] Reported in 143 N. W. 728.

[2] April, 1913, term calendar.

---

Note.—On the question of the power of a municipality to fix gas rates as an incident of its power to authorize the laying of gas mains, see note in 18 L.R.A.(N.S.) 1197. And upon the power of a municipality apart from contract to regulate rates to be charged by gas company, see note in 33 L.R.A.(N.S.) 759.

The question of legislative regulation of rates charged for gas, generally, is treated in a note in 33 L.R.A. 181. And as to the right to question reasonableness of statutory rate for gas, see note in 15 L.R.A.(N.S.) 763.

issue of fact is raised by the affidavits and evidence of the respective parties, the determination thereof by the trial court will not be reversed by this court, if there be evidence reasonably tending to support it. The facts bring this case within this rule.

**City ordinance — when effective.**

4. The contract provided that the council should fix the rates by ordinance, and further provided that plaintiff might test in the courts the reasonableness of the rates so fixed. *Held:* That, unless stayed by injunction,. such ordinance takes effect at the time and in the manner prescribed by the charter provisions relating to the enactment of ordinances, notwithstanding the bringing of an action to test the reasonableness of the rates fixed therein.

**Refusal to enjoin — reversal by this court.**

5. The contention of plaintiff, that the injury which may result to plaintiff from the denial of a temporary injunction is so disproportionate to any injury which might result to the consumers from the granting of it as to be a sufficient ground for the issuance of such injunction, was for the trial court to determine. The trial court having refused such injunction and the evidence as to the merits being comparatively evenly balanced, this court is not justified in reversing such action.

Action in the district court for Hennepin county to determine that an ordinance fixing the rates to be charged by plaintiff for gas to defendant city and to private consumers was unreasonable and void; that the rates were confiscatory and insufficient to afford plaintiff a reasonable return on its plant and property and to restrain defendant city, its officers and agents from completing the publication of the ordinance or from putting it into effect, and for a temporary injunction. Plaintiff moved for a temporary injunction and obtained an order requiring defendants to show cause why such injunction should not issue. The order was heard before Molyneaux, J., who denied the motion. From the order denying the motion and discharging the order to show cause, plaintiff appealed. Affirmed.

*Cobb, Wheelwright & Dille, W. A. Lancaster* and *Pierce Butler,* for appellant.

*Daniel Fish,* City Attorney, for respondents.

TAYLOR, C.

This is an appeal by plaintiff from an order denying its applica-

tion for a temporary injunction restraining defendants from publishing or putting into effect, during the pendency of the action, an ordinance, duly passed by the city council and approved by the mayor, fixing the rates to be charged for gas furnished to consumers within defendant city.

The complaint alleges that ever since 1870 plaintiff has been engaged in the manufacture and sale of gas for heat and illuminating purposes to defendant city and to the residents therein under and by virtue of an ordinance of the city approved February 24, 1870, and accepted and agreed to by plaintiff, a copy of which is attached to and made a part of the complaint; that this ordinance was modified and amended by an ordinance approved February 23, 1910, which was also accepted and agreed to by plaintiff, and a copy of which is also attached to and made a part of the complaint; that on July 25, 1913, the city council of defendant city "acting and pretending to act under the powers conferred upon and reserved to it" by the amendatory ordinance of 1910 passed, and the mayor of the city approved, a third ordinance, a copy of which is attached to and made a part of the complaint; that the city charter requires all ordinances to be published in the official paper of the city before they shall be in force; and that this third ordinance will immediately be so published, unless defendants are enjoined from publishing the same.

The complaint further alleges that the value of plaintiff's plant as a going concern is the sum of $9,990,867; that since the passage of the amendatory ordinance in 1910 plaintiff has been receiving from private consumers 85 cents per thousand cubic feet of gas, and from the city 65 cents per thousand cubic feet; that such rates and the revenue which plaintiff is receiving from all sources is not sufficient to yield a fair and reasonable return upon the value of its property devoted to the public use; that such rates are in no manner and to no extent excessive, unfair or unreasonable, and are not more than is charged at other places for like service under similar circumstances; that plaintiff's plant at all times has been and is operated as economically and with as little expense as is practicable; that during the ensuing year the operating expenses will be increased more than $106,000 by the increased price of oil, and by

reason of that increase alone the cost of manufacturing gas will be increased 4.97 cents per thousand cubic feet; that the average yearly increase of taxes paid by plaintiff for the last five years has been the sum of $11,329.58; that the increased volume of sales resulting from the reduction in rates proposed in the ordinance of 1913 will not offset the decrease in gross income for the period during which such rates will necessarily be in effect if established; that in order to receive a fair and reasonable return upon the value of its plant as such value is defined in the ordinance of 1910, plaintiff should be permitted to charge its private consumers more than one dollar per thousand cubic feet of gas; and that the rates proposed by the ordinance of 1913 are inadequate and insufficient to permit plaintiff to give good service and such service as it is now giving. The complaint further alleges that, in order to keep up with the growth of the city and provide service for new consumers, plaintiff will be compelled to expend for betterments during the next five years at least $2,000,000; that, under the rates proposed by the ordinance of 1913, it will be unable to make such betterments, because its revenue under such rates will be so inadequate that it will be unable to secure the new capital necessary therefor. The complaint further alleges that plaintiff has more than 60,000 private consumers; that under the proposed rate of 70 cents per thousand cubic feet of gas the yearly saving to the individual consumers will be as follows:

| Per cent of consumers affected | Saving per year at 70 cent rate |
|---|---|
| 25% | $ 0.98 |
| 28% | 2.53 |
| 20% | 3.92 |
| 10% | 6.37 |
| 6% | 7.76 |
| 4% | 7.97 |
| 2% | 12.26 |
| 1% | 17.16 |
| 1% | 12.26 |
| $\frac{1}{2}$% | 19.58 |
| $2\frac{1}{2}$% | 43.14 |

The complaint further alleges that, if the ordinance of 1913 should be published and immediately go into effect, plaintiff's 60,-000 consumers would refuse to pay the present rate for gas, and, if plaintiff pending an adjudication as to the reasonableness of the rates fixed by the ordinance should refuse to furnish gas at such rates, would severally institute actions to compel plaintiff so to do and thereby subject plaintiff to a multiplicity of suits; that if plaintiff should be compelled to and did furnish gas at such rates and thereafter such rates should be adjudged to be unreasonable, plaintiff would be compelled to resort to a multiplicity of suits against consumers to recover the difference between the present and the reduced rates, and in so doing would be subjected to enormous expense and irreparable loss; that in the case of a large number of consumers, as shown by the above table, the amount involved would be too small to justify the expense of a suit and yet that the aggregate amount involved would be more than $300,000; that if defendants should publish or enforce said ordinance or put the same into effect pending this action, all of which they will do unless enjoined therefrom, it would render the judgment herein ineffectual, for plaintiff would be subjected to great loss and its property confiscated and destroyed before such judgment could be rendered; that the ordinance of 1913 is unreasonable and void and in violation of the contract embodied in the ordinance of 1910, and if put into effect would deprive plaintiff of its property without due process of law and would take such property for public use without compensation; that public interest and the welfare of plaintiff require a judicial determination of plaintiff's rights; and that in equity and good conscience it should not be subjected to the great loss, expense and inconvenience to which the enforcement of the ordinance of 1913 will subject it.

The answer admits the allegations of the complaint relating to the adoption of the three ordinances therein mentioned, but, with certain exceptions not of special importance, puts in issue all other allegations therein.

It then alleges that plaintiff's "capital investment" is no more than $4,318,179; that its net earnings for the year ending March 31, 1913, were $765,777; that between April 1, 1910, and January

1, 1913, it distributed to its stockholders $762,000 in dividends; that the betterments referred to in the complaint are extensions of service into new territory; that the additional revenue therefrom will pay an adequate return upon the cost thereof; that the price of gas has been reduced three times within ten years and each reduction has been followed by a large increase in consumption; that the rate of 85 cents per thousand cubic feet to private consumers now in force under the ordinance of 1910 is largely in excess of a fair and reasonable price; that the rate of 70 cents per thousand cubic feet is a fair, reasonable and adequate price to such consumers; that plaintiff by the ordinance of 1910 agreed that the city might fix the rates subject only to the provision that the same be reasonable and adequate; that the remedy of plaintiff provided by the contract, in case it should deem the rate so fixed unreasonable or inadequate, is an action to review and correct the same; and that this is not the action authorized by the contract.

The reply alleges that the net earnings of plaintiff for the year ending March 31, 1913, after deducting operating expenses, taxes and depreciation, were no more than $614,636.41; that the amount distributed to its stockholders in dividends between April 1, 1910, and January 1, 1913, was no more than $634,000, of which $420,-000 was a portion of its surplus and undivided profits accumulated prior to April 1, 1910; that the increase in consumption of gas mentioned in the answer was due largely to increase in population and not to the reduction in rates therein referred to; and that this action was designed and intended to be and is the action provided for and contemplated by the ordinance of 1910.

The ordinance of 1870, referred to and made a part of the complaint, gave plaintiff the exclusive right to manufacture and sell gas within the city of Minneapolis. It provided for fixing and determining the rates to be charged the city, but made no provision for regulating or determining the rates to be charged private consumers. It also provided that the city might purchase the property at the expiration of 40 years upon the terms therein prescribed, and further provided that, if the city should decline to purchase upon these terms, the rights of plaintiff should continue for an additional

20 years. This ordinance was legalized and confirmed in 1879 by a special act of the legislature. In 1910 the right of the city to purchase became operative. After prolonged negotiations between plaintiff and the city, the city enacted and plaintiff accepted and agreed to the ordinance of 1910. The provisions of this ordinance, so far as here important, are sections 3 and 5, which are as follows:

Section 3. "Regulation of rates. That at any time after the expiration of three years from and after the first day of the month succeeding the acceptance by the company of this ordinance, and at any time thereafter, but not oftener than once in five years, the city council may, or if requested in writing by the company so to do, shall, by ordinance, fix and determine the rates to be charged by the company both to the city and to private consumers therein; which rates shall in each instance be so fixed and determined, subject to the provisions of section 5 hereof, and independent of whether or not the laws now or hereafter in force give to the city council the right, power and authority to so fix and determine the same. The company shall thereupon comply with such ordinance as to rates, subject only to the provisions of said section 5, and furnish gas at rates not to exceed those so fixed until the same shall be again fixed and determined as herein provided. And the company shall also at all times, unless otherwise determined by the city council, furnish gas to consumers other than the city and its various boards and departments, at a uniform rate, and without any discrimination between them."

Section 5. "Rates and prices to be reasonable. That the rates and prices which shall be fixed and determined by the city council under and pursuant to the provisions of section 3 of this ordinance, and the price for the use of the lamps and other apparatus and appliances and the service to be rendered and performed by the company pursuant to the last preceding section (section 4, not here material), shall always be just and reasonable, and shall not be so fixed as to fail to afford a fair and reasonable return upon the company's capital investment, nor until the company shall be given a hearing or an opportunity therefor before the city council or a

committee thereof as to the reasonableness of the same; and the reasonableness of all such rates and prices shall always be subject to review and correction in any action or proceeding which shall be instituted therefor by the company in any court having jurisdiction of the subject matter.

"That the company's 'capital investments,' as that term is used in this ordinance, shall be and mean the fair and reasonable value of its plant as a going concern, having regard to its condition of repair and its adaptability and capacity for generating and furnishing gas. In determining such value, no value shall be placed on good will, or upon the unexpired term of any franchise, or on future profits based upon any unexpired terms thereof; and in the determination of such value no regard shall be had to the company's capitalization, as represented by its outstanding stocks and bonds.

"That the term 'plant' as used in this ordinance, shall in every case be understood to mean all and every part of the property belonging to or under the control of the company, which is used in the exercise of any franchise belonging thereto, and which is within the limits of the city, and necessarily devoted to the generating and furnishing of gas to the city or the inhabitants thereof, including all lands and all rights therein and all buildings, machinery and apparatus devoted to such service."

In 1913, the time having arrived when a new rate might be fixed, both plaintiff and the city employed experts with a corps of assistants to determine the amount of plaintiff's "capital investment" as defined in the ordinance of 1910, to determine plaintiff's net income therefrom, and to determine the rates necessary to be charged to consumers in order to afford a fair and reasonable return upon such "capital investment." Both sets of experts made an exhaustive examination and report but differed widely in their results. Hearings were had before the proper committee of the city council at which the experts testified at length and went into the matter in detail.

Mr. Baehr, the expert employed by plaintiff, computed and determined the "capital investment" as follows:

| | |
|---|--:|
| Real estate | $ 552,779 |
| Buildings | 490,043 |
| Apparatus | 1,310,482 |
| Piping, etc. | 181,865 |
| Mains, etc. | 2,089,964 |
| Street lamps, service, etc. | 905,395 |
| Meters in use | 550,854 |
| Meters in stock | 15,851 |
| Stable and garage equipment and tools | 21,436 |
| Office equipment | 55,923 |
| Working capital | 500,000 |
| Depreciation reserve fund | 346,275 |
| Going value | 2,250,000 |
| Total | $9,990,867 |

Mr. Marks, the expert employed by the city, computed and determined the "capital investment" as follows:

| | |
|---|--:|
| Real estate | $ 226,944.00 |
| Buildings and structures | 275,510.65 |
| Contents of buildings and structures | 470,760.92 |
| Yard connections | 31,919.18 |
| 10% on above two items | 50,268.01 |
| Holders and tanks | 629,026.00 |
| Street mains and lamp posts | 1,646,689.90 |
| Services | 377,334.00 |
| Meters | 338,943.27 |
| Tools and equipment | 20,783.00 |
| Working capital | 250,000.00 |
| Total | $4,318,178.93 |

We will not discuss the matter in which these values were obtained further than to say that both experts adopted the so-called reproduction method; that both estimated and determined the cost of reproducing the plant; that in determining the present value of the existing plant both deducted substantial amounts from the cost of such reproduction for depreciation resulting from age and use; that to the present value so obtained Mr. Marks added 12½ per cent on account of so-called "overhead charges" and Mr. Baehr added somewhat over 15 per cent on account of such charges; and that the amounts added on account of such "overhead charges" are apportioned to and included in the values above stated.

Mr. Baehr estimates that a rate of 96 cents per thousand cubic feet of gas is necessary to afford a return of 6% upon the capital investment. Mr. Marks estimates that a rate of 67.8 cents per thousand cubic feet will afford a return of 6 per cent thereon.

After considering the evidence before it, the city council, acting under the authority conferred upon it by the ordinance of 1910, passed, and the mayor approved, the ordinance of 1913 which, omitting the preamble, is as follows:

Section 1. "That from and after Sept. 1, 1913, the prices charged by the Minneapolis Gas Light Company for gas delivered by it to the city of Minneapolis, and its inhabitants shall not exceed the prices following, respectively:

"To the city and to the various boards and departments thereof, sixty-five (65) cents per thousand cubic feet.

"To private consumers within said city, seventy (70) cents per thousand cubic feet.

Section 2. "Except as to the rates or prices aforesaid, said ordinance of February 23, 1910, shall remain in force and all the terms and conditions thereof shall be applicable in all respects as if the prices herein fixed had been originally agreed upon.

Section 3. "This ordinance shall take effect and be in force from and after its publication."

As soon as the ordinance was approved by the mayor and before it was published, plaintiff began this action to have it adjudged void as unreasonable and to enjoin defendants from publishing it or putting

it into effect.   Plaintiff also forthwith made a motion for a temporary injunction restraining defendants during the pendency of the action from publishing the ordinance, from putting it into effect, from instituting or authorizing any suit or proceeding to put it into effect or to enforce any of its provisions, and from making complaint for violation of such provisions, upon the grounds, "that even an attempt to publish or temporarily to enforce said ordinance, or to put the same into effect, would result in the infliction upon plaintiff of great damage and injury, and subject it to a multiplicity of suits with its patrons," and, "would render the judgment to be recovered herein ineffectual, for complainant's property would be thereby confiscated and destroyed before any judgment could be rendered herein."   Plaintiff also procured an order to show cause restraining defendants from doing any of the things sought to be enjoined until the hearing and decision upon such order.

In its decision upon the application for a temporary injunction, the court recited plaintiff's motion in full as stated in the notice thereof, and then concluded its decision as follows:

"And the court having duly considered said motion, and the affidavits, records and files offered by the respective parties, and the arguments of counsel:

"It is ordered, that said motion be, and the same is hereby, denied, the order to show cause accompanying said motion discharged, and the restraining order therein terminated and annulled."

This purports to be and in terms is a decision upon the merits upon all the questions presented.

The judge, however, appended to his order a memorandum from which it is claimed that he only passed upon and determined that the court had no authority to prohibit the publication of the ordinance and did not consider or determine the other questions presented.   The memorandum recites that plaintiff applied for an injunction restraining the publication of the ordinance, and, in effect, expresses the opinion that such an injunction would be in violation of the contract between the parties; that the city has the right to complete the act of fixing the rates by publishing the ordinance; and that the remedy of plaintiff is to appeal to the courts, after the rates have

123 M.—16.

been put into effect by such publication. No other question was mentioned or referred to therein. The memorandum was not made a part of the order, however, and contains no statement that the decision was confined to the point discussed. The order is positive and unambiguous and must be given effect as a decision upon the merits according to its terms. It cannot be controlled or limited by inferences that may be drawn from such a memorandum. Alton v. Chicago, M. & St. P. Ry. Co. 107 Minn. 457, 120 N. W. 749; Kipp v. Clinger, 97 Minn. 135, 106 N. W. 108; Holland v. Great Northern Ry. Co. 93 Minn. 373, 101 N. W. 608; Gay v. Kelley, 109 Minn. 101, 123 N. W. 295, 26 L.R.A.(N.S.) 742; Pinkerton v. Wisconsin Steel Co. 109 Minn. 117, 123 N. W. 60.

The question before this court is whether, upon the facts before the trial court, the refusal of that court to issue a temporary injunction was error. The rule in such cases, established by numerous decisions of this court, is this: "Where, upon the hearing of an order to show cause, or a motion, an issue of fact is raised by the affidavits and evidence of the respective parties, the determination thereof by the court will not be reversed by this court if there be evidence reasonably tending to support it. First Nat. Bank of Winona v. Randall, 38 Minn. 382, 37 N. W. 799; Bausman v. Tilley, 46 Minn. 66, 48 N. W. 459; State v. Madigan, 66 Minn. 10, 68 N. W. 179." Stai v. Selden, 87 Minn. 271, 92 N. W. 6; First State Bank of Montgomery v. Schatz, 104 Minn. 425, 116 N. W. 917; Perkins v. Gibbs, 108 Minn. 151, 121 N. W. 605; Viers v. Perry, 112 Minn. 348, 127 N. W. 1120; Kloppenburg v. Minneapolis, St. P. & S. S. M. Ry. Co. supra, page 173, 176, 177, 143 N. W. 322.

It is conceded to be settled law that rates established by a municipality under legislative authority are presumed to be fair and reasonable. It is also a well-settled rule that where parties by contract authorize and empower any man or body of men to determine a certain matter according to rules prescribed by the contract and within limitations therein fixed, such determination, when made, is presumed to have been made in accordance with the provisions of the contract and to be proper and correct. We think this rule applies to the present case, and that the rates fixed by the city council are

presumed to be fair and reasonable until the contrary is shown. It follows from this that the onus is upon plaintiff to establish that they are unfair or unreasonable.

The plaintiff bases its motion for a temporary injunction upon the complaint and upon affidavits summarizing the testimony given before the city council by its experts. Defendants base their opposition to the motion upon the answer and upon affidavits summarizing the testimony given before the city council by experts employed by the city. According to the affidavits presented by the city, the rate fixed in the ordinance of 1913 is reasonable and adequate. According to the affidavits presented by plaintiff, this rate is inadequate and unreasonably low.

Upon the showing made this court cannot say that the weight of evidence is manifestly or palpably in favor of plaintiff's contention that the proposed rate is unreasonably low. There is substantial and credible evidence in support of such contention. There is also substantial and credible evidence in support of the contention that such rate is fair and adequate. The burden is upon plaintiff to show that it is not adequate. The evidence is so conflicting and so nearly balanced that the case is within the rule above stated, and the decision of the trial court must stand unless plaintiff is entitled to such injunction upon other grounds.

Plaintiff contends that the action of the city council in fixing rates is tentative merely, and, in case an action is brought to have such proposed rates adjudged unreasonable, that they do not take effect until the termination of such action. Were this contention well founded, it would determine plaintiff's application for a temporary injunction adversely to plaintiff, for, if the mere bringing of the action suspends the operation of the rates, there is no need for such injunction. Although the contract is not entirely clear we cannot give it the effect claimed.

Section 3 empowers the council to fix and determine the rates by ordinance, but provides that such rates, "shall in each instance be so fixed and determined, subject to the provisions of section 5." This imposes a limitation upon the power of the council, and requires it to exercise such power under and in accordance with the restrictions

and limitations prescribed in section 5. These limitations are that the rates which shall be *fixed by the council* "shall always be just and reasonable, and shall not be so fixed as to fail to afford a fair and reasonable return upon the company's capital investment, nor until the company shall be given a hearing or an opportunity therefor before the city council or a committee thereof as to the reasonableness of the same."

After providing for fixing the rates by ordinance, section 3 further provides that "The company shall thereupon comply with such ordinance as to rates, subject only to the provisions of said section 5, and furnish gas at rates not to exceed those so fixed until the same shall be again fixed and determined as herein provided." This imposes an obligation upon the company to put the rates into effect except as it may be relieved therefrom under and in accordance with the provisions of section 5. Section 5 provides, in effect, that the company may institute, in the courts, any proper action or proceeding to determine whether the rates fixed by the ordinance are reasonable.

We think it is intended that the council shall determine what rates are reasonable and establish such rates by ordinance, and that the ordinance shall go into effect as ordinances usually do, but that plaintiff, if it claims that the rates so established are not fair and reasonable, may resort to the courts for a determination of that question.

The contract provides that the rates shall be fixed by ordinance. In the absence of any provision to the contrary this necessarily implies that the ordinance shall be enacted and put into effect as provided in the well known charter provisions governing such matters. The provision for a hearing before the council, the limitations placed upon its action, the fact that no appeal is provided and no time limited in which plaintiff may bring suit, the probability that the time when the rates should go into effect would have been expressly stated had it not been intended that the ordinance should take effect as ordinances usually do, and the provision that the company shall comply with such ordinance, all indicate that the parties intended the ordinance to take effect at once. It may also be noted that the action

to test the reasonableness of the rates need not be brought until after the ordinance has been in effect for an extended period, and it will hardly be contended that the mere bringing of such action would operate to suspend rates already in force.

It is also improbable that the parties intended to offer such an inducement for prolonging the litigation as would result from the construction contended for.    Take the present case as an example. Plaintiff claims that the proposed change in rates will reduce its revenue over $300,000 per year.    If these rates are fair and reasonable, and are eventually determined so to be, but do not take effect until the final termination of the litigation concerning them, plaintiff will receive over $800 per day as a premium for prolonging such litigation.

The fact that plaintiff does not appear to have made such claim in the trial court; that it sought by injunction to prevent the publication of the ordinance; and that it offered and still offers to give bond to refund any excess over the proposed rate received during the litigation in case such rate be held valid, indicates that plaintiff itself understood and expected that the rates would go into effect as soon as the ordinance should be published.

It is also contended that the decision appealed from should be reversed under what is termed the "comparative hardship" rule.    Under this rule injunctions are frequently issued in cases in which the final outcome may be doubtful, if the injury to the moving party will be certain, great and irreparable if it be denied and the final decision be in his favor, but the injury to the opposing party, if it be granted, will be inconsiderable whatever the result.    Whether the relative injury that may be inflicted upon the respective parties by granting or refusing such injunction is such as to justify its issuance in cases in which the final outcome is doubtful is a question peculiarly within the province of the trial court to determine.

In all the cases cited by plaintiff in support of this contention the facts were materially different from those in the case at bar.    In Missouri, K. & T. Ry. Co. v. Love (C. C.) 177 Fed. 493, involving railway rates, the rates had actually been in effect for many months, and the trial court held that the proof established that they were

clearly insufficient. In Wilmington City Ry. Co. v. Taylor, 198 Fed. 159, involving street railway rates, the trial court held that the company had in effect been denied its right to a hearing before the board that established the rates, and that its contract rights had been ignored. In New Memphis G. & L. Co. v. City of Memphis (C. C.) 72 Fed. 952, involving gas rates, the rates appear to have been fixed without any hearing or investigation, and the showing made by the company does not appear to have been controverted. In Indianapolis Gas Co. v. City of Indianapolis (C. C.) 82 Fed. 245, the facts alleged by plaintiff were undisputed. In Harriman v. Northern Securities Co. (C. C.) 132 Fed. 464, the distribution of certain securities and property held by the company was enjoined, pending the determination of the proportion thereof to which the several parties were entitled. In Ekeberg v. Mackay, 114 Minn. 501, 131 N. W. 787, 35 L.R.A.(N.S.) 909, Ann. Cas. 1912 C, 568, a temporary injunction issued by the trial court restraining a mortgage foreclosure sale for an alleged excessive amount was sustained as within the discretion of that court. In Milwaukee Co. v. Bradley, 108 Wis. 467, 84 N. W. 870, the court, after stating that the facts were undisputed and that upon the face of the ordinance in controversy, "there is no warrant that we can discover for defendants' position," reversed the order of the lower court upon the ground that the refusal of a temporary injunction, "where there is a clear necessity therefor, is an abuse of " judicial "power." In DePauw v. Oxley, 122 Wis. 656, 100 N. W. 1028, 13 L.R.A.(N.S.) 173, it appeared that defendant without claim of right had repeatedly trespassed upon and inflicted injury to plaintiff's premises and intended to continue so doing, and the court reversed the trial court on the ground that refusal of an injunction was an abuse of discretion.

In Love v. Atchison, T. & S. F. Ry. Co. 185 Fed. 321, 107 C. C. A. 403, the circuit court of appeals affirmed the action of the trial court in Missouri, K. & T. Ry. Co. v. Love (C. C.) 177 Fed. 493, referred to above, but (at page 331) states the rule governing appellate courts in such matters as follows: "An appeal from an order granting or refusing an interlocutory injunction does not invoke the judicial discretion of the appellate court. The question is not whether or not

that court in the exercise of its discretion would make or would have made the order.   It was to the discretion of the trial court, not to that of the appellate court, that the law entrusted the granting or refusing of these injunctions, and the only question here is:   Does the proof clearly establish an abuse of that discretion?   Massie v. Buck, 128 Fed. 27, 31, 62 C. C. A. 535."

These comprise all the cases cited by plaintiff upon this point. They state that the relative injury which may result to the respective parties, is an important and may be so disproportionate as to be a controlling element in determining whether an injunction should issue.   But in all, save the two Wisconsin cases, the trial court granted an injunction.   They are not cases in which the refusal of the trial court to grant such relief was sought to be overruled.   In the two Wisconsin cases, the court held that the right of the moving party was clear, not doubtful, and that the trial court abused its discretion.   No case is cited in which an appellate court has reversed a trial court for denying an injunction where the evidence left the final outcome doubtful.

The relative injury that may result to the parties, together with all the other circumstances bearing upon the matter, should be taken into consideration by the trial court in forming its conclusion.   But where the evidence as to the merits is comparatively evenly balanced, it is only in exceptional cases that interference by an appellate court can be justified.   The excerpt from the opinion of the circuit court of appeals in Love v. Atchison, T. & S. F. Ry. Co. supra, states the rule governing the Federal appellate courts in such cases.   Ritter v. Ulman, 78 Fed. 222; Bradshaw v. Miner's Bank, 77 Fed. 932, 23 C. C. A. 578; City of Terre Haute v. Farmers' Loan & Trust Co. 99 Fed. 838, 40 C. C. A. 117.

This court has consistently followed and applied the same rule.

In each of the following cases the trial court refused to issue a temporary injunction and this court declined to interfere as the trial court was acting within the limits of its discretion.   Rockwood v. Davenport, 37 Minn. 533, 35 N. W. 377, 5 Am. St. 872; Myers v. Duluth Transfer Ry. Co. 53 Minn. 355, 55 N. W. 140; McGregor v. Case, 80 Minn. 214, 83 N. W. 140; Watters v. City of Mankato,

106 Minn. 161, 118 N. W. 358; Meagher v. Schussler, 106 Minn. 539, 118 N. W. 664; Kelling v. Edwards, 116 Minn. 484, 134 N. W. 221, 38 L.R.A.(N.S.) 668; Dahlberg v. Lundgren, 118 Minn. 219, 136 N. W. 742.

The final outcome of the suit when it shall have been tried upon the merits is doubtful. The evidence in support of the opposing claims is comparatively evenly balanced and consists largely of opinions which are more or less conjectural. As suggested by the Supreme Court of the United States, in Louisville v. Cumberland Telephone & Telegraph Co. 225 U. S. 430, 32 Sup. Ct. 741, 56 L. ed. 1151, and Knoxville v. Knoxville Water Co. 212 U. S. 1, 29 Sup. Ct. 148, 55 L. ed. 371, an actual test by putting the rates into operation for a time may show that plaintiff's fears as to the results are unfounded. If such test shows that the rates are too low to give a fair return upon the capital investment, the courts will not hesitate to grant relief. But in view of the uncertainties in which the question now before the court is involved, and of the principles governing the action of this court in such matters, we are not prepared to say that the trial court, under the rule of "comparative hardship," abused its discretion by permitting the rates to remain in effect for the present.

Order affirmed.

The following opinion was filed on November 7, 1913:

PER CURIAM.

Plaintiff's application for a re-argument is based mainly upon the contention that the trial court merely determined that the publication of the ordinance should not be enjoined, and did not pass upon the other questions presented. Plaintiff applied to the trial court for a temporary injunction restraining defendants during the pendency of the action from publishing the ordinance, from putting it into effect, from causing the institution of any suit or proceeding to put it into effect, and from making any complaint based upon the violation of its provisions. The court denied the entire application It did not merely deny the application to enjoin the publication of the ordinance, but it also denied the application to enjoin defendants from enforcing the provisions of the ordinance.

This court is confined to the record and must give effect to the decision of the trial court as deciding those questions which by its terms it does decide.

But as the memorandum of the trial judge and the arguments in this court furnish foundation for plaintiff's claim that the denial of the application to enjoin the enforcement of the rates was based upon grounds not going to the merits of such application, the case will be remanded without prejudice to the right of plaintiff to apply to the trial court for a re-hearing upon the question as to whether defendants shall be enjoined from putting the rates prescribed in the ordinance into effect during the pendency of the action.

In enacting the ordinance, the city council was acting within its proper province and the facts are not such as would justify a court in prohibiting the performance of the conditions necessary to complete such action. Therefore the trial court was correct in refusing to enjoin the publication of the ordinance; but this is not to be construed as precluding consideration of the validity of the ordinance upon the merits.

The application for a re-argument is denied.