## BOROUGH OF BELLE PLAINE v. THE NORTHERN POWER COMPANY.[1]

### May 9, 1919.

### No. 21,336.

**Municipal corporation — electric light franchise — rates — due process of law.**

1. It will be presumed that rates specified in a contract between a municipal corporation and the grantee of a franchise to operate an electric light plant are reasonable, and the electric light company has the burden of proving that they are so low that a refusal to sanction an increase would result in depriving it of its property without due process of law, even though the ordinance granting the franchise and the contract itself do not unqualifiedly prohibit the company from increasing its rates.

**Appeal and error — conflicting evidence — temporary injunction.**

2. This court will not interfere with the action of the trial court in granting or refusing a temporary injunction, where the evidence as to the facts is conflicting and no irreparable injury impends.

**Municipal corporation — rates of public service corporation — ordinance or contract.**

3. The rates charged by a public service corporation for service fur-

[1] Reported in 172 N. W. 217.

nished to the inhabitants of a municipality, may be regulated by contract as well as by ordinance. Regulation by ordinance calls for the exercise of governmental functions, and by contract for the exercise of the business or proprietary powers of the municipality.

**Same — injunction against refusal of service at contract rates — bond.**

4. A municipal corporation is entitled to a temporary injunction restraining an electric light company, operating under a contract fixing rates, from refusing to furnish service at the contract rates when it is protected by a bond securing it against loss in case it is finally decided that it should have been permitted to put into effect increased service rates.

Action in the district court for Scott county to restrain defendant from charging any higher rates than those fixed by ordinance, or in any manner abandoning their electric light plant at Belle Plaine, or from refusing to operate it and to furnish plaintiff and its citizens electricity for domestic and commercial purposes. Plaintiff's motion for a temporary injunction was granted, Tifft, J. From an order granting the injunction, defendant appealed. Affirmed.

*Jamison, Swan, Stinchfield & Mackall,* for appellant.
*T. J. O'Brien* and *W. H. Leeman,* for respondent.

LEES, C.

By this action the borough of Belle Plaine seeks to restrain the Northern Power Company from putting into effect increased rates for electric service and from refusing to continue to furnish service at rates specified in a contract with the borough. An application for a temporary injunction was granted. The borough gave a bond of $1,000, conditioned as provided by G. S. 1913, § 7891, and a temporary writ was then issued. This appeal is from the order granting the application.

In 1916 the defendant company purchased an electric light plant at Belle Plaine from a copartnership which had obtained a franchise from the borough in 1909 to establish and maintain such plant and to occupy the streets with poles and wires. The grant of the franchise was by ordinance. At the same time a contract was entered into between the borough and the grantees of the franchise. The portions of the ordinance and contract which are here material were to the following effect: By

the ordinance it was provided that the borough council reserved the right to regulate the rates for commercial lighting if those charged were excessive, and by the contract it was agreed that the rate to be charged for electric light furnished to the inhabitants of Belle Plaine should not exceed 15 cents per kilowatt hour, and that the borough should have the right to regulate the rate by ordinance if at any time it exceeded the maximum rate specified in the contract.

On October 1, 1918, the company put into effect new rates for commercial lighting as follows: 17 cents per kilowatt for the first 50 kilowatt hours, 16 cents per kilowatt for the second 50 kilowatt hours, and 14 cents per kilowatt for the next 100 kilowatt hours, each month, without discount. Shortly thereafter this action was brought to restrain it from charging these prices.

1. The first question presented is, whether the provisions of the ordinance and contract, to which we have referred, justified the trial court in granting the temporary writ, without proof that the increased rates were excessive, and before an ordinance to regulate them was adopted. We are of the opinion that the language of the ordinance and contract is such that the company is not unqualifiedly prohibited from increasing its rates for commercial lighting.

In 4 McQuillin, Mun. Corp. § 1741, the following statement is made: "If a public service company, by its franchise, agrees to certain rates, it cannot thereafter claim that such rates are unreasonable and confiscatory." In the cases cited in support of this statement, it appears that no provision was made in the contract which would authorize an increase of rates if changed conditions warranted it. Here the ordinance provides that the rates shall be reasonable and the council reserves the right to regulate them, if at any time excessive rates are being charged, and the contract reserves a similar right, if the rates at any time exceed those specified therein. The presumption is that the rates specified in the contract are reasonable. Minneapolis Gaslight Co. v. City of Minneapolis, 123 Minn. 231, 143 N. W. 728; Louisiana R. R. Comm. v. Cumberland Tel. & Tel. Co. 212 U. S. 414, 29 Sup. Ct. 357, 53 L. ed. 577; Portland Ry. Lt. & Power Co. v. City of Portland, 200 Fed. 890; McCook Waterworks Co. v. City of McCook, 85 Neb. 677, 124 N. W. 100. Therefore the company has the burden of proving that the contract rates are

so low that the refusal of the borough council to sanction the proposed increase would amount to depriving it of its property without due process of law. 4 McQuillin, Mun. Corp. § 1746; Knoxville v. Knoxville Water Co. 212 U. S. 1, 29 Sup. Ct. 148, 53 L. ed. 371. Apparently that was the view entertained by its counsel, for, at the hearing of the application, there were presented to the court, affidavits tending to show that it was operating at a loss under the contract rates, and that the new rates would only give it a profit of 4 per cent on its investment. We think this question can best be decided after the evidence is all in and the case submitted for final determination. At the hearing of the application for the temporary writ, the borough was entitled to rely upon the presumption that the contract rates were reasonable, and the court was justified in deciding that the statements in the affidavits to the contrary were not sufficient to overcome the presumption.

2. It is well settled that this court will not interfere with the action of the trial court in granting or refusing a temporary injunction where the evidence as to the facts is conflicting and no irreparable injury impends. Twitchell v. Cummings, 128 Minn. 391, 151 N. W. 139; Minneapolis Gaslight Co. v. City of Minneapolis, 123 Minn. 231, 143 N. W. 728. The rule has also been stated as follows: "The granting of a temporary injunction is a matter that is discretionary with the trial court, and, unless that discretion is abused, the action of the trial court will be sustained." Potter v. Engler, 130 Minn. 510, 153 N. W. 1088. This case is one falling within the application of the rule.

3. The rates charged by a public service corporation for service furnished to the inhabitants of a municipality may be regulated by contract as well as by ordinance. In this case permission had to be obtained from the borough to use its streets for the maintenance of the poles and wires over which electric current was delivered to the users thereof. As the price of granting such permission, the borough was at liberty to demand that the charges for electricity should not exceed a certain fixed sum. The grantees of the franchise were at liberty to accept or reject the terms offered. When the proposed terms were accepted, a valid contract was made. The only distinction between the power to regulate rates by ordinance and by contract, is that the former calls for the exercise of a governmental function, and the latter for the exercise of the business or

proprietary powers of the municipality. The first requires the consent of only one body—the second, consent of two bodies. City of Noblesville v. Noblesville Gas & Imp. Co. 157 Ind. 162, 60 N. E. 1032; Muncie Nat. Gas Co. v. City of Muncie, 160 Ind. 97, 66 N. E. 436, 60 L.R.A. 822. In the latter case the municipality fixes rates as effectually as in the former, and the grantee of the franchise is not in a position to assert that the rates should have been regulated by ordinance instead of by contract. 4 McQuillin, Mun. Corp. § 1741; Chas. Simons Sons Co. v. Maryland Tel. & Tel. Co. 99 Md. 141, 57 Atl. 193, 63 L.R.A. 727.

4. It appears from the allegations of the complaint that the company put the increased rates into effect despite the objections of the borough; that it threatened to shut down its plant and cease to furnish service, if it was not allowed to charge for commercial lighting at the new rates, and that the bringing of this action has been authorized by the borough council. Upon this state of facts, it would seem to be superfluous to require the council to adopt an ordinance re-establishing the contract rates as a condition precedent to the bringing of the action. We gather from the complaint that the position of the borough is, first, that the company is bound to furnish service at the contract rates even though it will lose money by doing so, and, second, that if it is not so bound, nevertheless the contract rates are reasonable, while the new rates are excessive and unreasonable. These questions have not been decided on their merits in the court below. Until they are so decided, there is no hardship in requiring the company to continue to furnish service at the old rates. If the final decision is that it is entitled to charge for service on the basis of the new rates, it has a claim for damages against the borough, enforceable by action and secured by a bond. For these reasons, we are of the opinion that the action of the trial court was clearly within the limits of sound judicial discretion and should be sustained.

Order affirmed.