STATE EX REL. ALFRED FLODIN AND ANOTHER v. DIS-
TRICT COURT FIFTEENTH JUDICIAL DISTRICT,
COUNTY OF KOOCHICHING, AND OTHERS.[1]

December 6, 1946.

No. 34,350.

[1]Reported in 25 N. W. (2d) 692.

*Kaplan, Edelman & Kaplan* and *Henry Paull,* for relators.

*L. P. Blomholm, John M. Palmer, Donald A. Holmes,* and *Stinchfield, Mackall, Crounse & Moore,* for respondents.

MAGNEY, JUSTICE.

Original proceeding for a writ of prohibition against the district court of the fifteenth judicial district, Koochiching county, the Honorable D. H. Fullerton as judge thereof, and others to prevent them from proceeding in the following entitled actions:

In the Matter of the Trusteeship of the Sick Benefit Fund for the Benefit of Certain Employees of Minnesota and Ontario Paper Company and Others; and

548

G. N. Millard and B. B. Kotilinek as Successor Trustees of the Sick Benefit Fund for the Benefit of Certain Employees of Minnesota and Ontario Paper Company, a Minnesota Corporation, and Others, Plaintiffs, v. Minnesota and Ontario Paper Company, a Minnesota Corporation, Defendant.

On September 29, 1944, relators, Alfred Flodin and Ole Myhre, commenced an action for an accounting against the International Lumber Company (hereinafter called the lumber company) in the district court for St. Louis county, alleging in substance that prior to and since 1909 plaintiffs and others similarly situated paid certain moneys into a benefit fund; that the lumber company collected the same and agreed to administer it; that the trust and purposes for which the fund had been created had long since been abandoned; and that defendant was holding said fund.

On October 16, 1944, the lumber company demanded a change of venue to Hennepin county. The change was made, and the action is now pending in that county. Nothing further was done in said action until January 24, 1946. No answer had been served. On that day, plaintiffs obtained an order authorizing an amendment to the complaint so as to join the Minnesota and Ontario Paper Company (hereinafter called the paper company) as an additional party defendant. The application for this order stated that since the commencement of the action plaintiffs had learned that the fund was in the possession of the paper company. The amended complaint alleged that the paper company took possession of the benefit fund on February 28, 1941. It charged that the lumber company did not disburse the fund for the exclusive benefit of the contributors thereto, but diverted large sums for wholly improper purposes and objects, and that the paper company has continued such wrongful diversions. It prayed for a full accounting of the fund by each of the defendants, for a money judgment for the full balance of the fund, together with amounts which should be restored on account of improper or illegal diversions, for the appointment of a receiver to receive and disburse the fund to the persons entitled thereto, and for incidental relief.

On December 11, 1945, Oscar Sandstrom, R. W. Croucher, K. F. Speelman, and Ray C. Schneider filed a petition in the district court for Koochiching county entitled: "In the Matter of the Trusteeship of the Sick Benefit Fund for the Benefit of Certain Employees of Minnesota and Ontario Paper Company, a Minnesota Corporation," and certain affiliates and subsidiaries. The petition sets out that petitioners Sandstrom and Croucher are and for some years past have been employes of the paper company and its predecessors, and that petitioner Schneider is and has been for some years past an employe of the Minnesota, Dakota & Western Railway Company, a Minnesota corporation (hereinafter called the railway company); that, as such employes, they had for a number of years contributed to a certain Sick Benefit Fund; that about 300 other individuals presently employed by the paper company and its affiliates and subsidiaries are beneficiaries of the fund; that from prior to October 15, 1925, until December 4, 1941, the lumber company was a subsidiary of the paper company and its predecessors; that the lumber company was wound up and liquidated into the paper company as of September 30, 1941, and its corporate existence terminated on December 4, 1941; that from prior to October 15, 1925, until September 21, 1933, the Koochiching Realty Company (hereinafter called the realty company) was engaged in the real estate business at International Falls; that the controlling stockholders of the realty company and the paper company until February 28, 1931, were the late E. W. Backus and the members of his family; that on September 21, 1933, the realty company ceased operations; that from prior to October 15, 1925, until December 8, 1936, the Falls Lumber and Coal Company (hereinafter called the Falls company) was a subsidiary of the paper company and ceased its operations on the latter date; that from prior to October 15, 1925, until the present time the railway company has been a subsidiary of the paper company and its predecessors and has engaged in the operation of a common carrier railroad; that from prior to October 15, 1925, until the present time the International Telephone Company (hereinafter called the telephone com-

pany) has engaged in the telephone business at International Falls and vicinity; that until February 28, 1931, the telephone company and the paper company, by virtue of stock ownership, were under the common control of the late E. W. Backus and the members of his family; that prior to October 15, 1925, the paper company, the lumber company, the realty company, the Falls company, the railway company, and the telephone company each maintained an employe benefit fund to which various of its employes contributed small sums each month and from which benefits were paid in the event of the sickness, injury, or death of the contributing employes; that on or about October 15, 1925, the separate employe benefit funds were consolidated and combined into a single fund, and the lumber company was designated as the custodian and trustee of said fund; and that a written declaration of trust setting forth the purposes and the manner of operation and administration of said fund was made and executed by the lumber company. The petition further states that prior to the consolidation and combination of the above separate employe benefit funds the matter was taken up with the state commissioner of insurance, and the declaration of trust hereinbefore mentioned was examined and approved by the commissioner pursuant to the provisions of L. 1919, c. 388; that on November 8, 1925, said commissioner issued to the lumber company, upon its application, an annual license for the operation of said Sick Benefit Fund, and issued successive annual licenses to the lumber company for the operation thereof in each succeeding year up to June 30, 1942; that the employes of the realty company contributed to and received benefits from said fund until September 21, 1933, when said company ceased operations; that the employes of the Falls company contributed to and received benefits from said fund until December 8, 1936, when said company ceased operations; that various employes of the paper company, the lumber company, the railway company, the telephone company, and of various other affiliates and subsidiaries of the paper company and its predecessors in interest contributed to and received benefits from said consolidated Sick Benefit Fund until

on or about September 30, 1941; that since September 30, 1941, no further contributions to said consolidated fund have been made, although disbursements of benefits from said fund have been made to various beneficiaries from time to time; that the fund exceeds the sum of $60,000 and comprises the corpus of an express trust to be administered and disbursed in the manner specified in the declaration of trust; that the lumber company was the trustee of the consolidated fund from its inception until December 4, 1941, when the corporate existence of that company terminated, and that on that day the paper company took over the custody and control of the fund; that since the termination of the corporate existence of the lumber company up to at least December 11, 1945, there has been no duly appointed and authorized trustee of said fund; and that on October 1, 1945, the paper company gave notice in writing of its intention to discontinue in the near future the payment of benefits from the Sick Benefit Fund.

In this petition reference is made to the action pending in Hennepin county; that no answer had been interposed; that plaintiffs in that action were not in the employ of the companies at the time of the commencement of the action; that they were not entitled to the fund and have no right to maintain the action. The petition was not served on relators or anyone else. Certain alleged beneficiaries joined in the petition. It was heard ex parte. The court found that the allegations contained in the petition were true and correct; that the Sick Benefit Fund therein referred to constitutes the corpus of an express trust of which the court has jurisdiction; and that there is at present no trustee of said trust; and that successor trustees should forthwith be appointed to conserve and protect said fund. On December 11, 1945, the date of the hearing, Judge Fullerton appointed successor trustees. Included in his order was a statement that "The Court hereby reserves full and exclusive jurisdiction over these proceedings" and of the fund and the successor trustees. The order recites as reason for action without notice "that petitioners and those joining with them in said petition constitute a substantial and representative portion of the

beneficiaries of said trust," and "that it would be difficult, if not impossible, and expensive to give notice of a hearing on said petition to all persons who have heretofore contributed to said fund."

Relators contend that the trust has failed and been terminated and that the fund should be distributed, while petitioners and joiners in the trusteeship proceeding affirm the continuing existence of an express trust and seek the appointment of successor trustees to administer it. Relators allege that said petitioners and joiners so affirming the continued existence of the trust are not fair and proper representatives of relators and others similarly situated. They further claim that the procedure adopted in the trusteeship was arbitrary and capricious and did not fairly insure the protection of the absent beneficiaries, who contend that the trust has terminated and that there has been failure of due process of law.

The successor trustees accepted the appointment on December 20, 1945. The order of appointment purported to vest in the trustees a cause of action against the paper company, and such an action was instituted on February 9, 1946.

Relators contend that the district court of the fifteenth judicial district for Koochiching county is without jurisdiction in the trusteeship proceeding, in that it had and has no jurisdiction over the corpus of the trust or over the persons of relators and others having an interest therein, and that it had no jurisdiction to appoint successor trustees or to vest them with the cause of action against the paper company. In effect, they say that it purports to divest plaintiffs in the first action. They also claim that the causes of action are the same except for the matter of administration and disposition of the proceeds.

On February 13, 1946, defendants (the lumber company and the paper company) in the Hennepin county action answered the amended complaint. The answer alleged that the lumber company was dissolved on September 30, 1941, and it adopted the validity and propriety of the proceedings in Koochiching county and asserted the title of the successor trustees to the fund.

The return to the writ sets out:

(1) That the writ of prohibition is an extraordinary remedy, which should issue only when it clearly appears that the trial court has exceeded its jurisdiction, and that no issue on the merits can be determined;

(2) That the district court of Koochiching county has jurisdiction of the parties and the subject matter in the trust proceedings and the accounting action commenced by the trustees against the paper company;

(3) That there is no conflict in jurisdiction between the district court for Koochiching county and the district court for Hennepin county, for the following reasons:

(a) The parties to the Hennepin county action are not the same as the parties to the action in Koochiching county.

(b) The subject matter and the issues in the action pending in Hennepin county are not the same as those in the Koochiching county action.

(c) The relief sought in the Hennepin county action is not the same as that sought in the Koochiching county action.

(d) The petitioners for the writ of prohibition have other adequate remedies.

■ "A writ of prohibition, as employed in this state, is an extraordinary writ issuing out of the supreme court for the purpose of keeping inferior courts, or tribunals, corporations, officers and individuals invested by law with judicial or quasi-judicial authority, from going beyond their jurisdiction." 5 Dunnell, Dig. & Supp. § 7840, and cases cited.

■ No issue on the merits of the controversy below can properly be raised upon the application for such writ. State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198.

■ It seems proper to consider first the proposition whether there is conflict in jurisdiction between the district court for Koochiching county and the district court for Hennepin county.

A reading of the pleadings reveals that the parties to the Hennepin county action are not the same as those in the Koochiching

county proceeding. In the Hennepin county case, plaintiffs (relators here) allege that—

"plaintiffs and many others *employed by the defendant* [the lumber company] individually paid into a certain, fund"; that defendant "acted as trustee thereof for the use and benefit of plaintiffs *and other persons* entitled to said benefits *who were similarly situated";* and "that *the names and addresses of such persons and employes* who contributed to said fund *can be ascertained only from the books and records of said defendant corporation,* which books and records are in the possession of said defendant." (Italics supplied.)

It is obvious that plaintiffs in that action were bringing suit as employes of the lumber company only and for others who were similarly situated, that is, employes of the lumber company. This situation becomes more apparent as one reads the amended complaint. In it, plaintiffs there (relators here) state that—

*"plaintiff* [*s*] *and* numerous *other persons employed by said Lumber Company* paid into an Employees Benefit Fund a certain portion of their wages * * *."* Further, that "This action is brought by *plaintiffs* in their own behalf, and *on behalf of all contributors to said Fund* who are similarly situated," that is, employes of the lumber company. They further allege that "All of the payments to said Employees Benefit Fund by *plaintiffs* and *others similarly situated* were collected and administered by said Lumber Company, which acted as custodian and trustee thereof for the benefit of *plaintiffs and others similarly situated."* Also, "In addition to plaintiffs, *many other employees of said Lumber Company* made regular contributions to said Employees Benefit Fund. *The identity of the persons and their present location and addresses can be ascertained only from the books and records of the Lumber Company,* which are in the possession of defendants." (Italics supplied.) In their prayer for relief they ask ."That a full accounting of said fund be made by defendants, and each of them, and that the true balance owing *to plaintiffs and others similarly situated* be determined." (Italics supplied.)

The original and amended complaints show that the plaintiffs (relators here) are concerned with a trust beneficially owned exclusively by employes of the lumber company and exclusively for their benefit. Relators claim, nevertheless, that the language of the amended complaint is sufficiently broad to include also the employes of the paper company and its other affiliates and subsidiaries and sufficiently definite to indicate that the fund they are attempting to reach is the so-called consolidated fund. The language of the amended complaint clearly does not permit us to say that it covers the employes of the various companies and the consolidated trust fund which was established by the declaration of trust on October 15, 1925. The phraseology used limits the scope of the Hennepin county action. The books and records of the lumber company certainly will not disclose the identity and address of any employes except those of the lumber company, the only pleaded beneficiaries.

In the trusteeship proceeding in Koochiching county, two of the petitioners are present employes of the paper company, and one is a present employe of the railway company. Joining in the petition were 106 present employes of the paper company and affiliated and subsidiary companies. Thus it is apparent that the petitioning parties in the trusteeship proceeding are not the same as the plaintiffs in the Hennepin county action, who had been employes of the lumber company only and who claimed in their petition to represent employes of that company only. The fund involved in the Koochiching county litigation was the consolidated trust fund established by the written declaration of trust made on October 15, 1925, in which trust the employes of six separate companies were to participate as beneficiaries. The fund involved in the Hennepin county action, according to the complaint, was a fund contributed to by the employes of the lumber company only. Thus, the parties and the funds involved in the two proceedings are not the same. Relators inferentially claim that the fund they are attempting to secure and administer through a receivership is a part of the consolidated fund, and that therefore the same fund is involved. After

the merger or consolidation of the various trust funds their separate identity was lost. All that any employes of any company had was an interest in common with the contributing employes of the other companies in the consolidated fund. All that the trust proceeding does is to preserve the common fund for all contributor beneficiaries. It is obvious that the consolidated fund is an indivisible one, and that it is not possible or practicable to distribute portions of said fund in two separate proceedings.

The relief sought in the Hennepin county action and that sought in the Koochiching county proceeding is, as has been pointed out, entirely different. Petitioners in the Koochiching county case seek to have the consolidated fund administered as an existing trust in that court, while plaintiffs in the Hennepin county action are asking that the fund paid in by the employes of the lumber company be terminated as a trust and that the money be paid out to the contributors.

The amended complaint presents the limited issue of whether the employe benefit fund beneficially owned by the employes of the lumber company was terminated by the expiration of the corporate life of that company. The trust proceedings, however, are based upon a consolidated Sick Benefit Fund. In the petition it is claimed that the fund is beneficially owned by the employes of at least six different companies. It may be stated here that four of the companies are still engaged in active business operations.

From the above it would seem that there is no conflict between the district court for Koochiching county and the district court for Hennepin county. The parties are not the same, the fund involved, which is the subject matter, is not the same, and the relief sought is not the same.

In State ex rel. Minnesota Nat. Bank v. District Court, 195 Minn. 169, 173, 262 N. W. 155, 157, this court cited with approval the following language in 15 C. J., Courts, § 583:

"Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires ju-

risdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coördinate power is at liberty to interfere with its action. This rule rests upon comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results." See, 21 C. J. S., Courts, § 492.

The case before us presents a situation where the two actions or proceedings do not involve the same parties. They do not involve the same subject and are not brought to test the same rights. The relief prayed for in the two proceedings is not the same. The result is that the Hennepin county court, where the action which was first commenced is now pending, has inadequate power to dispose of the whole matter involved in the Koochiching county proceeding. It is true that when one acquires jurisdiction over the subject matter and the parties to an ordinary lawsuit that jurisdiction which is first acquired is exclusive, but it must be of the same subject matter and the same parties and to test the same rights. It has been pointed out that the subject matter, the parties, and the relief prayed for in the two legal proceedings here involved are entirely different. It follows that the basis for an absolute writ of prohibition is lacking.

■ In 14 Am. Jur., Courts, § 246, the rule is stated as follows:

"Where the pendency of a suit in one court is relied on to defeat a second suit in another court of concurrent jurisdiction, the identity of the parties, of the case made, and of the relief sought should be such that if the first suit had been decided it could be pleaded in bar as a former adjudication."

In view of the dissimilarity of parties, subject matter, and relief asked for in the two proceedings, if the district court for Hennepin county should render judgment in the action pending before it, such judgment could not be successfully pleaded as *res judicata* and thus serve as a bar to the Koochiching county proceeding.

Subjected to that test also, it is evident that relators are not entitled to the relief asked for here.

■ Furthermore, it appears from the record that the parties in the two proceedings are in disagreement with respect to the question whether the trust still continues or has terminated, and also with reference to the question of who is entitled to share in the fund—as between present and former employes.

In the recent case of Hansberry v. Lee, 311 U. S. 32, 61 S. Ct. 115, 85 L. ed. 22, 132 A. L. R. 741, the United States Supreme Court held that a judgment rendered in a class or representative suit is not *res judicata* where it appeared that the parties purporting to represent all parties to the action were hostile to the position of other parties on a vital issue. In asking for a writ here, relators themselves contend that the petitioners in the Koochiching county proceeding are antagonistic to the claims of relators. From their own representations, it is obvious that, as a representative or class suit, theirs does not include petitioners in the Koochiching county proceeding. Thus, relators themselves allege a conflict in interest which in itself would prevent their action in the Hennepin county court being a representative action in behalf of all employe contributors to the fund.

■ What we have already said disposes of the case. In view, however, of relators' insistence with apparent conviction that the Koochiching county court lacks jurisdiction, we will briefly comment on that claim. The fund was a consolidated fund, contributed to by the employes of several different corporations, some of which are still continuing in operation. When the lumber company, the trustee of the express trust, ceased to exist, that demise did not terminate the fund. Minn. St. 1945, § 501.41, provides:

"Upon the death of the surviving trustee of an express trust, the trust estate shall not descend to his heirs, nor pass to his personal representatives; but the trust, if then unexecuted, shall vest in the district court with all the powers and duties of the original trustees; and shall be executed by some person appointed for that purpose, under the direction of the court."

In commenting upon this statute, this court said in McLaughlin v. Minnesota L. & T. Co. 192 Minn. 203, 210, 255 N. W. 839, 842:

"* * * It is but a statutory precaution that, upon a vacancy arising in a trusteeship, the trust estate may vest in the district court (2 Mason Minn. St. 1927, § 8103), which thereby may become a temporary repository of title, * * *."

Under our statute, it is apparent that upon the demise of the trustee of the express trust in this case, the lumber company, the trust estate vested in the district court for Koochiching county with all the powers and duties of the original trustee, and that it "shall be executed by some person appointed for that purpose, under the direction of the court." If by law the title to the trust estate vested in that court, it is difficult to understand why it did not have jurisdiction in rem over it and why such jurisdiction is not complete. By § 501.44, the district court has full power to appoint a new trustee in the place of one deceased, resigned, or removed. Having thus by statute been given jurisdiction in rem of the consolidated fund, it may determine all the conflicting interests of the various contributors.

The fact that the Koochiching county court proceeded to decide that the consolidated fund constituted the corpus of a continuing express trust without notice to plaintiffs in the Hennepin county action was, at most, an irregularity only and one which did not go to the jurisdiction of the court. If a defect, it was not a jurisdictional one. We are not called upon to determine here whether failure to give notice as contended by relators is an irregularity. The statutes which we have already quoted contain no provision for notice to anyone in proceedings for the appointment of a successor trustee.

Relators set out other reasons why a writ of prohibition should be issued here, among them the absence of the lumber company as a party in the Koochiching county proceeding and the impossibility at this late date of bringing that corporation into that proceeding while it is a party to the Hennepin county action. Respondents

contend that the lumber company is not properly a party in that action. We have already pointed out that the basis for the issuance of the writ of prohibition is lacking in the instant case, and it seems unnecessary to discuss and determine the questions raised as to the lumber company as a party.

Alternative writ discharged.