## STATE EX REL. WILL C. TURNBLADH v. DISTRICT COURT OF RAMSEY COUNTY AND OTHERS.

107 N. W. (2d) 307.

December 23, 1960—No. 38,237.

*Walter F. Mondale,* Attorney General, *Sydney Berde,* Deputy Attorney General, and *Robert W. Mattson* and *William E. Mullin,* Special Assistant Attorneys General, for relator.

*Goldie, Sigal & Cohen, W. E. G. Watson,* and *Drake & Drake,* for respondents.

LOEVINGER, JUSTICE.

This case arises on an application by the commissioner of corrections for a writ of prohibition to prevent the respondent district court from enjoining an administrative action by relator. Because of the procedural posture of the case, we must take the facts from the complaint of the respondent Douglas C. Rigg in the court below, subject, however, to the rules of construction applicable to pleadings. There has been no evidence offered to the court below or in the record before this court from which any findings of fact can be made. It is important to emphasize, therefore, that any statement in this opinion is merely a reflection of the allegations of the pleadings and is not an indication that there has been any showing or finding as to the facts.

Respondent Rigg is and has been for some time the chief execu-

tive officer, or "warden," of the Minnesota State Prison. Relator, Will C. Turnbladh, is the commissioner of corrections. The commissioner has general responsibility for and supervision of the Department of Corrections, which includes the prison. Minn. St. c. 243. On the night of August 25, 1960, the commissioner notified the warden to be present in the commissioner's office the following day to discuss a matter of alleged excessive requisitioning of food from the prison commissary for the warden and three employees under his direction.

The warden appeared at the commissioner's office on August 26, 1960, and talked in private to the commissioner during most of the day. This meeting is referred to in the complaint as a "hearing"; but from the facts alleged it appears that there was simply a private discussion between the commissioner and the warden which lasted from about 9 o'clock in the morning until after 4 o'clock in the afternoon. The commissioner and the warden then allegedly agreed informally that certain withdrawals of food from the prison commissary made and authorized by the warden were not illegal or dishonest but showed poor judgment, and that as discipline for said acts the warden should be suspended from his duties without pay for a period of 15 days and should repay to the state the amount of such withdrawals. This conclusion was apparently announced to various newspaper reporters and others at a news conference following the meeting between the commissioner and the warden.

Thereafter, on September 2, 1960, the commissioner served upon the warden a formal written "Notice of Hearing and Order to Show Cause." This notice stated that the warden was charged with misconduct as set out in an attached written "Statement of Charges," and that a hearing would be held thereon, pursuant to Minn. St. 246.02, subd. 1, as amended by § 243.02.

Before the date set for the hearing, the warden filed suit in Ramsey County District Court against the commissioner, alleging that in the conference between the commissioner and the warden the parties had arrived at a "settlement and adjudication" of the charges against the warden, that the matter was therefore res judicata, and that the commissioner "has been divested of jurisdiction over the person of the Warden with relation to such subject matter and over the subject mat-

ter of the proceedings." The complaint prayed for a temporary and permanent injunction restraining the commissioner from in any manner interfering with the warden's enjoyment of his office. A temporary restraining order was issued by the district court to prevent the holding of the proposed hearing by the commissioner. Thereafter, the commissioner secured an alternative writ of prohibition from this court to prevent the district court from acting in the matter.

The pleadings of the warden herein and the material submitted in support of the pleadings, including affidavits and briefs, are exceedingly voluminous and contain many repetitious, hearsay, and irrelevant allegations, including insinuations and charges against officials not involved in this proceeding in any way. The pleadings also contain lengthy and repetitious assertions of the virtue and competence of the warden and of the propriety of his conduct. Since the only issue that is or could be presented either to the district court or to this court at this stage of the proceedings involves the jurisdiction of the commissioner to proceed, the merits of the controversy are not involved; and, therefore, these allegations are irrelevant to the present proceeding. Nothing that is said herein should be taken to suggest any view or conclusion as to the merits of the basic controversy.

The only question for the courts at this time is whether the commissioner has jurisdiction to determine that the warden shall or shall not be retained in the state service, or whether the commissioner has been deprived of such jurisdiction by the informal proceedings mentioned above. If the commissioner has jurisdiction, it is improper, under our decisions and under generally recognized principles of law, for the courts to interfere with the administrative proceeding prior to the making of such a determination.

The first issue that arises is whether the doctrine of res judicata is applicable in the present proceeding at all. Although there is some authority to the effect that this doctrine does not apply to administrative proceedings, the sounder view appears to be that stated in 2 Davis, Administrative Law Treatise, § 18.02, as follows:

"As a matter of principle, it is completely clear that the reasons behind the doctrine of res judicata as developed in the court system

are fully applicable to *some* administrative proceedings. * * * The sound view is therefore to use the doctrine of res judicata when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in its favor."

Rigg's entire theory as to the application of res judicata to the present proceedings is constructed on the basis of a sentence appearing in Minn. St. 15.0418 relating to the hearing of contested cases in administrative proceedings. After stating the requirements for notice, specification of issues, opportunity to be heard, preparation of a record, and other matters, this section contains the following provision:

"* * * Informal disposition may also be made of any contested case by stipulation, agreed settlement, consent order or default."

In any rational view of what actually occurred, it does gross violence to commonsense to assert that a private conference between a department head and a subordinate executive relating to the conduct of that department constitutes a "hearing" in the sense that this term is used in statutes or decisions by lawyers familiar with legal procedure. It further does gross violence to commonsense to assert that an announcement to newspaper reporters constitutes a "stipulation, agreed settlement, consent order or default." There are numerous opinions and statements by lawyers and judges decrying "trial by newspaper." It is significant in the present case that Rigg seeks to establish the alleged informal disposition of this matter by putting newspaper reports and the affidavit of a newspaper reporter before the court. It is no reflection on these publications or the reporters involved to say that it would be a travesty of legal process to accept newspaper reports of statements by public officials as the equivalent of a formal judgment or administrative adjudication.

However, even were the newspaper reports accepted as the equivalent of a formal administrative order, it is still clear that under the authorities this is not the kind of proceeding to which the doctrine of res judicata is properly applicable. As indicated in the quotation from Davis above, there is no authority anywhere to the effect that res judicata is applicable to *all* administrative proceedings regardless of their

nature. The only authority for the application of this doctrine in such proceedings goes no further than to assert that the doctrine should be applied to administrative proceedings which are essentially quasi-judicial in nature. It is clear, however, that this does not include proceedings relating to removal from employment of a public employee.

This precise question was presented in New York in the case of Matter of Evans v. Monaghan, 282 App. Div. 382, 123 N. Y. S. (2d) 662. In that case a New York policeman was accused of accepting bribes from a professional gambler and of protecting the gambler against arrest. A formal hearing on these charges was held before a judge specially authorized as a hearing commissioner. The principal witness refused to testify. Other evidence was taken, and a formal written finding was made that the policeman was not guilty of the charges. Four months later the same charges were again filed against the policeman. The principal witness by this time had changed his mind and agreed to testify. A hearing was held on the new charges, and the policeman was found guilty. An appeal was taken to the courts alleging that the second trial was a violation of the policeman's rights, and that the first trial and formal findings constituted res judicata. In rejecting the plea of res judicata and sustaining the finding against the policeman and the order for discharge, the appellate division of the New York Supreme Court said (282 App. Div. 385, 389, 123 N. Y. S. [2d] 665, 668):

"The rule has never prevented the court itself from being moved to reopen the case and to reexamine the basis of its judgment for a cause which the court would regard as sufficient. While the judges developed a set of their own limitations on the sufficiency of the grounds which would move them to reopen, the rules related to the circumstances of exercise of power rather than to the power itself.

"A rule of law which would always treat as an analogue to the judgment of a court the determination of an administrative officer in the discipline of public employees would have to have a guarded acceptance and be taken with some considerable reservation. The theory of the enlargement of the court rule of finality to take in administrative determinations is that the administrator has acted 'judicially', but

that analogy in such a case rests very largely upon the fact that he conducts a hearing.

"His determination of what to do about the charges, if he finds them sustained, is essentially an administrative function, for in that phase of his authority he carries out the duty to administer the public agency in the direction of the public service it performs.

\* \* \* \* \*

"We would hesitate, too, to apply to this kind of a determination, involving discipline of public employees, the full effect of court judgments between litigating parties. The general rule has been stated that while the doctrine of res judicata applies to a judicial determination of a board or officer, it does not apply 'to a decision made while acting ministerially or administratively.' Such a determination, if 'not recognized by the law of the forum as a judgment,' is 'no bar to further proceedings in relation to the same matter.' "

On appeal this decision was affirmed, Matter of Evans v. Monaghan, 306 N. Y. 312, 324, 118 N. E. (2d) 452, 458, with the court of appeals saying:

"\* \* \* it would be beyond the spirit as well as beyond the letter of the doctrine of res judicata, as that doctrine is applied in court procedure, to bar the second departmental trial of petitioners."

The rationale of the Monaghan cases is not challenged by the dissenting opinions. Further, there is a long line of cases in this court which expressly approves that rationale by holding that the decision of an administrative body in determining whether or not to discharge an employee is an administrative function. State ex rel. McGinnis v. Police Civil Service Comm. 253 Minn. 62, 91 N. W. (2d) 154; Sellin v. City of Duluth, 248 Minn. 333, 80 N. W. (2d) 67; State ex rel. Ging v. Board of Education, 213 Minn. 550, 7 N. W. (2d) 544. These decisions go so far as to hold that, in view of the constitutional division of the powers of government, jurisdiction cannot be conferred upon the courts, either directly or indirectly, to pass upon or interfere with this administrative function; and, therefore, that any judicial review of such a matter must be a limited review. Thus, the

holdings of this court are that in exercising the function at issue here an administrator is acting in an executive or administrative capacity, and the basis for the application of the doctrine of res judicata does not, therefore, exist.

The reason for this conclusion is pointed out in the analogous case of Jason v. Summerfield, 94 App. D. C. 197, 214 F. (2d) 273, certiorari denied, 348 U. S. 840, 75 S. Ct. 48, 99 L. ed. 662. In that case a Federal government employee previously had a full hearing before the loyalty review board which found that reasonable grounds did not exist to believe the employee disloyal. Later another hearing was held on the same evidence to determine whether there was reasonable doubt as to the loyalty of the employee. In an action for declaratory judgment and an injunction, the employee contended that the prior hearing and finding of the loyalty review board precluded reexamination of the same charges in a later hearing. The court said that it would refuse to extend the principles of res judicata and equitable estoppel to such administrative proceedings. The court went on to say that there is no basis for holding that an executive department should retain in its service any whose loyalty is reasonably doubtful. Accordingly, it held that such an inquiry should not be precluded by an extension of the doctrine of res judicata to the prior finding involving this employee.

The cases cited above have all involved employees who were below the rank of policy-making executives. A fortiori the vice of requiring government to retain in its employment an employee who may, for any reason, be unqualified is greater in the case of a policy-making executive such as the warden.

Thus, accepting all the well-pleaded facts of Rigg's complaint and affidavits and giving him the benefit of all reasonable inferences therefrom, it is clear that the doctrine of res judicata does not prevent a prospective determination now by the commissioner as to whether Rigg should be retained as warden. Therefore it is improper to grant Rigg any of the relief prayed for in the court below on the face of his pleadings. As we have previously held, "when it appears that no case can be made under the pleadings for any injunctive relief, it should be considered an abuse of discretion to grant a temporary in-

junction pending litigation." Safro v. Lakofsky, 184 Minn. 336, 337, 238 N. W. 641, 642. Since any action by the district court to prevent the administrative proceedings proposed by the commissioner would thus be improper, under the rule of State ex rel. Sheehan v. District Court, cited and analyzed infra, this court should issue the writ to prohibit action by the district court at this stage of the matter.

A second, equally important, point is that in such a situation as presented here an administrative agency has a well-established right to reopen, rehear, and redetermine the matter even after a determination has been made. This is a rule of general application. Thus the United States Supreme Court has held that the Interstate Commerce Commission has the power to change a certificate of authority to engage in transportation services to add restrictions that were improperly omitted. American Trucking Assns. Inc. v. Frisco Transp. Co. 358 U. S. 133, 79 S. Ct. 170, 3 L. ed. (2d) 172. Similarly, it has been held that a state rent commission is not bound by its own error but can correct its own determination, at least in so far as this relates to prospective events and effect. Matter of Alamac Estates v. Abrams, 4 App. Div. (2d) 146, 163 N. Y. S. (2d) 242.

This court has recently reached the same conclusion in Anchor Cas. Co. v. Bongards Co-op. Creamery Assn. 253 Minn. 101, 106, 91 N. W. (2d) 122, 126, 73 A. L. R. (2d) 933, 938, where we said:

"* * * It is generally recognized that one of the powers proper to an efficient and just administration of the right to adjudicate is the power to reverse adjudications which appear to be erroneous * * *. This power lasts until jurisdiction is lost by appeal or certiorari or until a reasonable time has run, which would be at least coextensive with the time required by statute for review.

"Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it."

What the commissioner of corrections will or may do with respect to the present situation is not before us and is not now our concern. The commissioner has the continuing responsibility for administration

of the state prison, as well as other institutions. By a formal notice, the sufficiency of which is not challenged, he has proposed to hold a hearing upon specified charges, as well as upon any other charges that may properly be filed, on Rigg's qualifications to continue to hold the office of warden. The administrative action with which we are concerned here relates to prospective matters. Neither this court nor the district court can, constitutionally, be entrusted with the responsibility for determining or controlling those administrative matters. State ex rel. McGinnis v. Police Civil Service Comm. *supra;* Sellin v. City of Duluth, *supra.* There is certainly no logical basis for the court's undertaking to prevent the administrator who has this responsibility from exercising his judgment with respect to it. It requires emphatic repetition that the matter before us does not involve any question of penalty or civil liability, but only the future continuance in a responsible public position of an employee whose qualifications are formally challenged by his superior—regardless of the basis or merits of that challenge, which we are not in a position to pass upon.

In the third place, regardless of the applicability of the doctrine of res judicata, and regardless of the power of the administrator to reopen and rehear this matter, it should be clear that on any view the plea of res judicata does not, as Rigg asserts, operate to divest the administrative agency of jurisdiction. The statutory authority of the commissioner with respect to Rigg cannot, on the facts pleaded, be "exceeded or exhausted," as suggested in the dissenting opinions. Since there are no facts pleaded which would, if true, divest the commissioner of either jurisdiction or responsibility to make the determination proposed to be made, there is no "fact issue" for determination by the lower court. All that is required for determination of the instant case is a careful application of well-established principles of law.

Under the strictest common-law view, the plea of res judicata is a plea in bar of a second proceeding which operates as an estoppel and not as a deprivation of jurisdiction of the tribunal. Bowe v. Minnesota Milk Co. 44 Minn. 460, 47 N. W. 151; Cromwell v. County of Sac, 94 U. S. 351, 24 L. ed. 195. Counsel has cited and diligent search has disclosed no case so much as suggesting that res judicata

operates to deprive a tribunal of jurisdiction. On the contrary, a plea of res judicata is inconsistent with a denial of jurisdiction, since it presupposes a former valid adjudication of the same subject matter by the same tribunal and involving the same parties.

This court has held that the only exceptions to the long-settled rule that no one is entitled to an injunction against the actual or threatened acts of an administrative agency until the administrative remedies and the remedies by direct review have been exhausted are in case of a showing of the imminence of actual irreparable harm from action beyond the agency's jurisdiction or contrary to constitutional principles. Thomas v. Ramberg, 240 Minn. 1, 60 N. W. (2d) 18.

This court has most recently applied that rule in the case of State ex rel. Sheehan v. District Court, 253 Minn. 462, 93 N. W. (2d) 1, certiorari denied, 359 U. S. 909, 79 S. Ct. 585, 3 L. ed. (2d) 573. In that case the commissioner of insurance proposed to hold a hearing to determine whether an insurance company was engaging in unfair competition or deceptive practices. The insurance company sought and secured from the district court a restraining order preventing the holding of the hearing by the commissioner on the grounds that he was proposing to act beyond his statutory jurisdiction and in such a manner as to deprive the insurance company of due process of law. This court issued a writ of prohibition to the district court directing it to refrain from further proceedings in that matter. The court said, inter alia (253 Minn. 464, 467, 93 N. W. [2d] 3, 5):

"* * * The writ may issue to restrain an inferior court from exceeding its legitimate powers in a matter over which it has jurisdiction as well as to restrain it from proceeding in a matter over which it has no jurisdiction, and it may also issue to prevent an abuse of discretion where there is no other adequate remedy at law. * * *

\* \* \* \* \*

"* * * Where a court threatens to proceed in a matter over which it has no jurisdiction at a time when it is the duty of the administrative tribunal to proceed and act, a writ of prohibition will not be denied merely because there may be a remedy by appeal from the judgment."

As this court has previously observed in State ex rel. Nelson v. Board of Public Welfare, 149 Minn. 322, 328, 183 N. W. 521, 524:

"* * * It is well settled that the power to discharge an employe rests in the officer or board that appointed him, unless that power has been taken away by some express statute. [Citations.] It is also well settled that where an officer or employe is entitled to a hearing before he can be removed or discharged, such hearing is to be held by the officer or board possessing the power of removal in the absence of a statute providing otherwise."

In the situation presented here, the commissioner has the power of appointment, of removal, and of hearing and determining charges upon which removal may be based. Minn. St. 246.02, 243.02. The commissioner is charged with the responsibility for the control and supervision of the institution and the department within which the warden is employed. Minn. St. 243.01. It has been repeatedly held by this court, in cases cited above, that such administrative responsibility for the effective functioning of departments and institutions cannot be transferred from the administrator to the courts. Cf. Public Service Comm. v. Wycoff Co. Inc. 344 U. S. 237, 73 S. Ct. 236, 97 L. ed. 291.

This court cannot, therefore, consistently with its own prior decisions, and particularly with the decision in the Sheehan case, permit the district court to interfere with the administrative process prior to a final determination by the commissioner as to the fitness of the warden to continue in the position he holds in the public service. Indeed, the Sheehan case presented a much stronger case for judicial interference with the administrative process than is presented here. There it was alleged that the administrative agency was proposing to act beyond its statutory authority and in violation of constitutional rights. Here it is alleged merely that the commissioner will, or may, disregard a very tenuous plea of res judicata. This court cannot deny the writ here without overruling the Sheehan case, as well as disregarding the several cases, cited above, holding that the retention or discharge of a public employee is an administrative function, and that

an administrative agency has a right to reopen, rehear, and reconsider its own determinations until jurisdiction is lost by appeal or lapse of time.

Thus, confining our decision to the legal issues necessarily presented by this proceeding, as we must, it is clear that the writ of prohibition should issue to prevent judicial interference with administrative responsibility for determination of the continuing qualifications of the executives in the public service. The doctrine of res judicata is not applicable here because the confidential conference between the commissioner and the warden cannot in any realistic sense be called a hearing, nor can a newspaper report of a public statement be called an adjudication. By both reason and precedent the doctrine of res judicata is not applicable to proceedings involving the continuance in office of public employees. The commissioner, as any other administrator, clearly has the right to reopen, rehear, and redetermine a matter involving prospective action, regardless of the character of a previous determination, at least within the very short time interval involved here. In any event, res judicata is only a plea in bar and does not operate to deprive a tribunal of jurisdiction. Finally, under the clear decision of this court in the Sheehan case, the district court has no right to interfere with an administrative agency which is proposing to act in a matter properly within the scope of its general responsibility until final action has been taken by the administrative agency.

The writ is made absolute.

FRANK T. GALLAGHER, JUSTICE (concurring specially).

It appears to me that the only issue involved at this stage of the proceedings is whether the commissioner has jurisdiction to determine whether or not the warden shall be retained in the state service. It is my opinion under the facts and circumstances here that he has such jurisdiction. In that connection I concur specially with the opinion of Mr. Justice Loevinger and the authorities cited therein that the writ should be made absolute. It is my further opinion that if the commissioner retains jurisdiction he should proceed promptly with a hearing and a decision in the matter so that if an appeal is taken to this court it may be heard and finally decided without unnecessary delay.

NELSON, JUSTICE (dissenting).

I respectfully dissent from the conclusions reached in the majority opinion. That opinion states that the only question before the *courts* at this time, in the instant matter, is whether the commissioner has jurisdiction to determine that the warden shall or shall not be retained in the state service, or whether the commissioner has been deprived of such jurisdiction by the proceedings mentioned above. The truth of the matter is that the only question before this court on this application for a writ of prohibition is whether the district court had jurisdiction to determine whether the commissioner of corrections had on August 26, 1960, finally exercised the jurisdiction which he originally had. In other words, the undetermined question is whether the disposition made by the commissioner on August 26, 1960, is governed by that portion of Minn. St. 15.0418 which reads:

"* * * Informal disposition may also be made of any contested case by stipulation, agreed settlement, consent order or default."

It is well established that a writ of prohibition is a preventive rather than a corrective remedy and that such writ is not one of right but of discretion.

We said in State ex rel. United Elec. R. & M. Workers v. Enersen, 230 Minn. 427, 428, 42 N. W. (2d) 25, 26, that:

"Where court's jurisdiction, or lack of it, must be determined from the facts to be established by the trial, we should not determine the case on its merits on application for the writ."

We have long since established that the three essentials necessary to justify the issuance of a writ of prohibition are: (1) That the court or officer is about to exercise judicial or quasi-judicial power; (2) that the exercise of such power is unauthorized; and (3) that it will result in injury for which there is no other adequate remedy.

According to a principle established by numerous decisions of our court the lack of authorization to exercise judicial power must be found in the conduct of proceedings by which the tribunal wholly *usurps* jurisdiction or *exceeds* its legitimate jurisdiction.[1]

---

[1] See, Riesenfeld, Bauman, and Maxwell, *Judicial Control of Adminis-*

Matters which pertain to the propriety of the tribunal's action, otherwise than in the *jurisdictional sense,* are not subject to review on prohibition, nor does a writ of prohibition ordinarily lie where appeal affords an adequate remedy. Juster v. Grossman, 229 Minn. 280, 38 N. W. (2d) 832; State ex rel. Minnesota Nat. Bank v. District Court, 195 Minn. 169, 262 N. W. 155; 15 Dunnell, Dig. (3 ed.) § 7842.

In its procedural aspects the power to issue writs of prohibition in Minnesota is vested exclusively in the supreme court. Minn. St. 480.04, 587.01. This proceeding, therefore, constitutes an original proceeding based on the constitutional clause which grants the supreme court original jurisdiction in such remedial cases as may be prescribed by law. Minn. Const. art. 6, § 2. The prohibition against jury trials in the supreme court found in the same section applies to original jurisdiction of the supreme court, and thus all issues in prohibition cases must be decided upon affidavits.[2]

Section 605.09(2) provides for appeal to the supreme court "From an order * * * which grants, refuses, dissolves, or refuses to dissolve, an injunction, * * *." The fact that it may be less summary and more expensive does not ipso facto render appeal inadequate. State ex rel. Beede v. Funck, 211 Minn. 27, 299 N. W. 684.

In State ex rel. Eau Claire Dells Improvement Co. v. District Court, 26 Minn. 233, 235, 2 N. W. 698, 699, Mr. Chief Justice Gilfillan said:

"* * * where the party may raise the question of want of jurisdiction over the person in the court in which the action is brought, and have a review of its decision by this court, upon appeal, that is his proper remedy."

We held in In re Estate of Davidson, 168 Minn. 147, 148, 210 N. W. 40, 41:

"* * * whenever in an ordinary action it becomes necessary for

---

*trative Action by Means of the Extraordinary Remedies in Minnesota,* 36 Minn. L. Rev. 436, 443, and cases cited in note 421.

[2]See, Id. 450, 451.

the court to decide upon its own jurisdiction, and error in deciding that question can be corrected upon appeal, writ of error or certiorari, a writ of prohibition should not be granted."

Clearly § 605.09(2) provides an immediate and adequate remedy by appeal and a writ of prohibition ought not to be granted.

The files and proceedings before us indicate that Warden Rigg commenced an action by summons and complaint filed September 15, 1960, in the Ramsey County District Court and also filed a motion, supported by affidavits, for a temporary injunction. An ex parte order to show cause and restraining order was thereafter issued by the Honorable Clayton Parks. A bond was filed in accordance with statutory requirements.

The commissioner filed his petition in this court for an alternative writ of prohibition September 19, 1960, which writ was issued. Respondents Douglas C. Rigg and Clayton Parks filed separate returns and answers to said alternative writ. The facts relied upon by both sides have been presented by pleadings and affidavits. These indicate that on the night of August 25, 1960, the commissioner of corrections notified Warden Rigg to be present in his office on the morning of August 26, 1960, concerning the matter of alleged "excessive" food requisitioning in May and June 1959. Pursuant to such notice and order, Warden Rigg appeared at the scheduled hearing at the commissioner's office in St. Paul. The hearing on food requisitioning was conducted by the commissioner of corrections and continued from 9 a. m. until 4:15 p. m. except for an interval for lunch.

In making the charges on August 26 the commissioner read to the warden from a paper or report which he had received from the public examiner regarding food requisitions and the dollar amounts thereof.

The files further indicate that at the hearing conducted on August 26 charges made by the commissioner of corrections were contested by Rigg; that all matters were gone into fully regarding the alleged misconduct as to food requisitions; that agreement was reached between the commissioner and Rigg to settle and terminate the matter in order that the program at the Minnesota State Prison might be carried forward; that it was openly stipulated between the commissioner and the

warden that the commissioner would impose, and the warden would accept, disposition of the matter upon the following terms and conditions; to wit, the warden had not been guilty of an illegal act but had been guilty of an error of judgment; he would therefore be officially suspended from his duties as warden without pay for a period of 15 days certain, to commence on August 27, 1960, and to terminate on September 11, 1960; and thereafter he would be reinstated to his full duties and status as warden on the condition that he pay to the State of Minnesota such amounts as might be found to be due for any alleged excessive withdrawal of foodstuffs during May and June 1959 to be determined following consultation between the warden and the state public examiner. The files indicate that the warden accepted such determination as final disciplinary action and final disposition of the matter; that it was so agreed between the commissioner and the warden; and that the warden forthwith entered upon compliance therewith.

At the conclusion of the hearing on August 26, 1960, at about 4:15 p. m., the commissioner of corrections, in a joint, public news conference with the warden and with various newspaper reporters, announced the decision as aforesaid and stated to the press that at the conclusion of the 15-day suspension period the matter would be closed and the warden was then to be returned to his duties and his office. Full publication was given to this report by the press, and the warden complied with the agreement and left the prison on August 27, 1960, discontinuing his duties as warden for the period of 15 days.

On September 2, 1960, the commissioner apparently changed his position and served upon the warden the notice of hearing and order to show cause, notice and order of suspension, and statement of charges, based upon the same allegations and charges relating to the excessive requisition of foodstuffs from the general commissary in May and June 1959.

There is nothing to indicate that the normal remedy of appeal would not be adequate here since direct appeal from the order sought in the district court below would be available. It is not the function of this court to anticipate or prohibit an erroneous ruling. No issue on the merits of the controversy below can properly be raised upon the

application for the writ of prohibition we are here considering. State ex rel. Flodin v. District Court, 222 Minn. 546, 25 N. W. (2d) 692; State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198.[3]

In its application to have the writ of prohibition made absolute, relator relies upon State ex rel. Sheehan v. District Court, 253 Minn. 462, 93 N. W. (2d) 1, certiorari denied, 359 U. S. 909, 79 S. Ct. 585, 3 L. ed. (2d) 573. The Sheehan case involved Minn. St. 72.28, which seeks to prevent unfair competition in the business of insurance. Subd. 1 thereof provides for issuance of a statement of charges by the insurance commissioner and service thereof upon any person engaged in unfair methods of competition and for a hearing on said charges. Subd. 2 thereof provides that if the statement charges a violation of §§ 72.20 to 72.33, and if the prohibited practice has not been discontinued, "the commissioner may, through the attorney general, at any time after 20 days after service of the report, cause a petition to be filed in the district court within the district wherein the person against whom the charges were made resides." A transcript of the proceedings before the commissioner, including all evidence taken together with the report and findings, must be filed with such petition and upon such filing the district court acquires jurisdiction with the power to make appropriate orders and to issue such writs as are ancillary to its jurisdiction or necessary to its judgment to prevent injury to the public pendente lite. Clearly that case presented a situation which justified making the writ of prohibition absolute because it appeared unequivocally that the inferior court was about to take jurisdiction in a matter over which it possessed no jurisdiction at the time.

The mere fact that an inferior court has been asked to proceed beyond its jurisdiction is ordinarily insufficient to justify issuing the writ, for the presumption is that the court will act only within its jurisdiction. 15 Dunnell, Dig. (3 ed.) § 7843. As to the purpose and object of a temporary injunction, see Minneapolis Elec. Lamp Co. v. Federal Holding Co. 161 Minn. 198, 202, 201 N. W. 324, 325.

In School Dist. No. 1 v. Lindhe, 195 Minn. 14, 17, 261 N. W. 486, 488, this court said:

---

[3]See, Id. 446, et seq.

"It appears to be the general rule that injunction will not be granted against public officers to restrain them from exercising discretion where they are intrusted with discretionary power, and that such officers will not be restrained from performing official acts which they are by law required to perform or acts which are not in excess of the authority and discretion reposed in them. *Nevertheless it is a rule of very general application that where public officers are acting in breach of trust or unlawfully or without authority or threatening to do so and such acts will result in irreparable injury, they may be enjoined.*" (Italics supplied.) Citing 32 C. J., Injunctions, §§ 383, 384.[4]

If respondent Rigg in seeking injunctive relief can show that the remedy of the administrative agency has either been exhausted or that the pursuit of such remedy will cause imminent and irreparable harm to him as distinguished from merely speculative damages, then, of course, he should not be denied injunctive relief. See, Thomas v. Ramberg, 240 Minn. 1, 60 N. W. (2d) 18.

In the recent case of Marine v. Whipple, 259 Minn. 18, 22, 104 N. W. (2d) 657, 660, this court again enunciated the rule that where the normal remedy of appeal is not shown to be inadequate, a writ of prohibition cannot properly be used to anticipate or prohibit an erroneous ruling of the lower court, and Mr. Chief Justice Dell, speaking for this court, stated:

"* * * to grant prohibition under the circumstances before us would, in our opinion, only circumvent the statutory scheme of appellate review. Presumably the normal remedy of appeal is adequate, particularly where, as here, direct appeal from the order sought is available.[5] Relators have not sustained their burden of showing the

---

[4]See, J. F. Quest Foundry Co. v. International M. & F. W. Union, 216 Minn. 436, 440, 13 N. W. (2d) 32, 34; Oehler v. City of St. Paul, 174 Minn. 410, 219 N. W. 760; 9 Dunnell, Dig. (3 ed.) § 4485. As to the rule governing appellate review of the action of trial courts in granting or refusing injunctions, see Love v. Atchison, T. & S. F. Ry. Co. (8 Cir.) 185 F. 321, 107 C. C. A. 403; Minneapolis Gaslight Co. v. City of Minneapolis, 123 Minn. 231, 246, 143 N. W. 728, 734.

[5]See, Riesenfeld, Bauman, and Maxwell, *Judicial Control of Administrative Action by Means of the Extraordinary Remedies in Minnesota*, 36

inadequacy of this remedy. However compelling the reasons may be for deferring action on the petition involved, they do not go to the jurisdiction of the district court nor the propriety of issuing a writ of prohibition. These matters affect the merits and should properly be taken into consideration by the district court if presented to it. It is not the function of this court to anticipate or prohibit an erroneous ruling."

While the question of res judicata as to the commissioner's original determination was discussed before this court upon the application for the writ, it is clear that that question is not before us at this stage of the proceedings. It may properly be taken into account by the district court in the injunction proceedings.[6]

It has already been indicated that in the administrative proceedings the commissioner would seek the appointment of a referee, preferably a district judge of this state, to conduct the hearing required. The controversy is already in the District Court of Ramsey County where it can be determined whether any adjudication made on August 26, 1960, acceded to by both parties, is binding. Anyone aggrieved would have the normal remedy of appeal which is wholly adequate, particularly where, as here, direct appeal from the order sought is available.

While it would be improper to express any opinion concerning the merits, it seems clear that the ultimate determination of the questions presented here must of necessity be made after trial of the pending action in the court below. Less harm will result to either party if the terms of the restraining order are carried out pendente lite than if we were now to make the writ applied for absolute.

Clearly justice will best be served by discharging the writ of prohibition, thereby permitting the enforcement of the restraining order pendente lite until the rights of all the parties may be determined and declared after a full trial of the issues involved on the merits.

---

Minn. L. Rev. 435, 446, et seq. An order granting a mandatory injunction is appealable under Minn. St. 605.09(2).

[6]An exhaustive treatise of the doctrine of res judicata as applied to administrative proceedings may be found in 2 Davis, Administrative Law Treatise, §§ 18.01 to 18.12.

Elements clearly necessary to justify making the writ absolute are absent in the instant case and the writ should be discharged.

KNUTSON, JUSTICE (dissenting).

I dissent. The only question before this court is whether the district court had jurisdiction to determine whether there had been a final determination of the matter by the commissioner of the Department of Corrections. It seems clear to me that the district court had jurisdiction to determine that fact issue and, if so, a writ of prohibition does not lie to enjoin him from proceeding therein. I see no necessity for a lengthy discussion of the question of res judicata until the district court has passed on the only issue involved, nor do I see any justification for a lengthy discussion of other issues not involved in the matter now before us. I think that the writ should be quashed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.