In the Matter of the Joint Petition of **MURPHY MOTOR FREIGHT LINES, INC. (Brian F. Leonard, Trustee in Bankruptcy), 2323 Terminal Rd., St. Paul, MN 55113, as Transferor, and Quast Transfer, Inc., Hwy. 261 South, Winsted, MN 55395, as Transferee, for an Order Authorizing and Approving the Transfer of a Regular Route Common Carrier Certificate of Freight held by Transferor to Transferee.**

No. C4–88–567.

Court of Appeals of Minnesota.

Aug. 30, 1988.

James E. Ballenthin, Luther, Ballenthin & Carruthers, Minneapolis, for Murphy Motor Freight Lines, Inc. and Quast Transfer, Inc.

Jon Erik Kingstad, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Transp. Regulation Bd.

Richard L. Gill, Minneapolis, for Wren, Inc.

Robert D. Gisvold, Minneapolis, for Hyman Freightways, Inc.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

NIERENGARTEN, Presiding Judge.

The Minnesota Transportation Regulation Board (Board) approved the sale of a regular route common carrier certificate of authority from Murphy Freight Lines, Inc. (Murphy) to Quast Transfer, Inc. (Quast). The Board imposed several conditions on Quast and Quast appeals these conditions. We affirm.

### FACTS

Murphy was a major regular route common carrier of freight in Minnesota. In February 1987, Murphy filed for bankruptcy, and agreed to sell Quast its regular route common carrier certificate of authority for $201,000. The administrative law judge (ALJ) recommended approving the petition, allowing Quast to tack its regular route authority but not including irregular route authority.

After Quast's petition for transfer was submitted, the Board, acting on a separate complaint, revoked Quast's irregular route common petition for willfully operating as a regular route carrier under irregular route authority. *See Quast v. Minnesota Transportation Regulation Board,* 428 N.W.2d 462 (Minn.Ct.App.1988). The ALJ ruled that Quast's fitness was not at issue in the transfer proceeding. The Board disagreed and allowed the record of the Quast complaint case to be incorporated into this case.

The Board ultimately approved Murphy's petition to transfer the regular route authority to Quast but, based on its determination that Quast willfully disregarded regulatory authority in the past, imposed five conditions on the transfer:

1. That Quast was on probation for a period of three years from the date of service of the order with any violation of the laws or regulations to constitute grounds for mandatory revocation of the transferred certificate;

2. That Quast was to be subject to random audit checks by the Department of Transportation (MNDOT) Office of Safe-

ty and Compliance with a mandatory audit at least every 6 months;

3. That Quast was to submit to the Board within 45 days of the order specific routing tables for regular route operations in the Counties of Scott, Sibley, Stearns, Pope, Douglas, Grant, Traverse, Stevens and Wright Counties;

4. That Quast was to consult with MNDOT and TRB regulatory authorities relative to applicable motor carrier rules and regulations;

5. That Quast's tariff which guaranteed overnight delivery was revoked.

Quast appeals, arguing the order is arbitrary, capricious and unsupported by substantial evidence.

## ISSUE

Was the Board's imposition of conditions on the transfer of a regular route permit arbitrary and capricious and unsupported by substantial evidence?

## ANALYSIS

### Scope of Review

First of all, we must presume the Board's decision is correct and we are required to defer to "the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

■ We may affirm the decision of the agency or remand the case for further proceedings. We may also reverse or modify the decision:

if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1986).

In order to comply with these statutory requirements, we must determine whether the agency is acting quasi-judicially or in its legislative capacity since the standard of review differs.

"(a) When the Public Service Commission acts in a judicial capacity as a factfinder, receives evidence in order to make factual conclusions, and weighs that evidence as would a judge in a court trial, it will be held on review to the substantial-evidence standard.

"(b) When the Public Service Commission acts in a legislative capacity as in rate increase allocations, balancing both cost and noncost factors and making choices among public policy alternatives, *its decisions will be upheld unless shown to be in excess of statutory authority or resulting in unjust, unreasonable, or discriminatory rates by clear and convincing evidence.*" (Italics supplied.)

*Arvig Telephone Co. v. Northwestern Bell Telephone Co.,* 270 N.W.2d 111, 116 (Minn. 1978) (quoting *St. Paul Area Chamber of Commerce v. Minnesota Public Service Commission,* 312 Minn. 250, 262, 251 N.W. 2d 350, 358 (1977)). When a board considers matters of public convenience and necessity, it is acting in its legislative capacity. *Arvig,* 270 N.W.2d at 116–17. The statute authorizing an initial certificate for operation as a regular route common carrier considers public convenience and necessity. When the Board acts on a sale or transfer of a certificate, those concerns similar to an initial issuance need be addressed, and thus the Board is acting legislatively. Consequently, the Board decision can only be overturned if it is "demonstrated to be unjust or unlawful by clear and convincing evidence." *Id.* at 117.

### Applicable Law

■ The Board must consider whether the transfer of a certificate will adversely affect the rights of the users of the service or have an adverse effect on any other motor carrier. *See* Minn.Stat. § 221.081

(1986). Quast is appealing the conditions the Board placed on Quast's regular route authority as part of the transfer approval. Quast maintains these restrictions are unlawful, arbitrary and capricious, unsupported by substantial evidence and barred by principles of res judicata or collateral estoppel.

### Arbitrary and Capricious

In its memorandum, the Board indicated: [T]his carrier has shown a lack of willingness to submit to regulatory authority. Due to that fact, the Board concludes that the transfer of the certificate herein must contain sanctions and conditions to insure that the approval of the sale of the certificate will not affect the rights of the users of the service and will not have an adverse effect on competing motor carriers.

The Board set forth five "sanctions and conditions." Conditions 1 and 5 placed Quast on probation and revoked its guaranteed overnight delivery refund tariff. Conditions 2, 3, and 4 require monitoring by MNDOT and require Quast to consult with MNDOT when interpreting motor carrier regulations.

The Board could consider the decision in the complaint case. It is allowed to use information about an applicant that appears in the department records and files. *See* Minn.Stat. § 14.60, subds. 2, 4 (1986). *See also St. Paul Area Chamber of Commerce v. Minnesota Public Service Commission,* 312 Minn. 250, 256–57, 251 N.W. 2d 350, 354–55 (1977). The record discloses that Quast in the past has failed to abide by regulations. Such failure to abide by the regulations in the future could have an adverse effect on other carriers in the area, particularly in terms of lost revenue. Because of Quast's past problems, it was not arbitrary or capricious to impose conditions which would allow the Board to monitor future activities and insure future compliance. Submission to audits, submission of routing tables, and consultations with MNDOT on regulations clearly are not unreasonable requirements for an efficient monitoring system.

### Fitness Requirement

■ It is obvious that a carrier's fitness has a bearing on whether a carrier's activities would have an adverse effect on other carriers or the shippers. Therefore, Quast's fitness was a proper consideration for approving sale or transfer.

### Res Judicata

■ Quast argues the restrictions are barred by principles of res judicata or collateral estoppel because the parties, facts and subject matter are the same here as in the complaint case. Generally speaking, res judicata will apply to quasi-judicial proceedings. *State ex rel. Turnbladh v. District Court,* 259 Minn. 228, 231–34, 107 N.W.2d 307, 310–11 (1960). However, "there is no authority anywhere to the effect that res judicata is applicable to *all* administrative proceedings regardless of their nature." *Id.* at 232–33, 107 N.W.2d at 310 (emphasis in original).

While many of the facts in this case and the complaint case are the same, there are different parties and different issues. Murphy was not a party to the complaint case and some of the parties in the complaint case are not parties in this case. The issue in the first case was whether or not Quast was operating a regular route under its irregular route permit. The issue in this case was whether Quast should be allowed to buy Murphy's regular route authority. To decide this issue, the Board had to determine whether there would be an adverse effect on the shippers or the other carriers if the transfer was approved.

### DECISION

The Board's imposition of conditions on the sale of Murphy's regular route permit was not arbitrary and capricious and is supported by the record.

AFFIRMED.